J. Francis Driscoll *vs*. Donald W. Harrison
(and a companion case[1]).

Suffolk.  December 15, 1980. — February 25, 1981.

Present: Perretta, Dreben, & Nolan, JJ.

*Landlord and Tenant*, Eviction.  *Rent Control.  Words*, "Just cause."

A tenant's use of excessive force against his landlord's son during a skir-
mish between the two while the son was in the performance of his
duties related to the property, although found to be an isolated inci-
dent which was unlikely to recur, constituted just cause for eviction of
the tenant under St. 1970, c. 842, § 9(a) (10).  [446-449]

Civil actions commenced in the Boston Division of the
Housing Court Department on July 24, 1978, and August 1,
1978.

The cases were heard by *King*, J.

*Ellen S. Cooper* (*William H. Murphy* with her) for J.
Francis Driscoll.

*H. Crowell Freeman, Jr.*, for Donald W. Harrison.

Perretta, J.  After the tenant Harrison struck the land-
lord Driscoll's son (Frank) with a four-foot long closet pole,
Driscoll applied to the rent board of Boston for an eviction
certificate, alleging nuisance and just cause under St. 1970,
c. 842, § 9(a)(3) and (10), and c. 3, tit. 10, § 108(a)(iii) and
(x), of the Ordinances of the City of Boston.[2]  The board de-

---

[1] Donald W. Harrison *vs*. Rent Board of Boston and J. Francis Driscoll,
the tenant's landlord.

[2] As St. 1970, c. 842, § 9(a), and c. 3, tit. 10, § 108(a) of the Ordi-
nances of the City of Boston, are substantially identical in language, our
reference to the former will constitute also a reference to the latter
throughout this opinion.  Sections 9(a)(3) and (10) provide:  "(a)  No per-
son shall bring any action to recover possession of a controlled rental unit
unless:  . . . (3) the tenant is committing or permitting to exist a nuisance

nied the application on the nuisance ground, but it issued a certificate for just cause. Claiming that he had acted in self-defense, Harrison appealed to the Boston Division of the Housing Court Department, St. 1970, c. 842, § 10, and G. L. c. 185C, § 3, while Driscoll brought an action in summary process; the two matters were consolidated for trial.[3] See *Gentile* v. *Rent Control Bd. of Somerville,* 365 Mass. 343, 350 (1974). The judge found that there was no just cause to evict Harrison. He annulled the board's decision and entered a judgment in Harrison's favor on the summary process complaint. We reverse the judgments.[4]

We relate the facts as the judge found them. Harrison had resided in his rent controlled apartment from the time Driscoll first acquired the sixteen unit building in 1965. The tenancy relationship had been uneventful and harmonious the entire time with the exception of the "isolated incident" in question, which occurred on June 6, 1978. That morning Harrison was late for work. As he was going to his car which was in the parking lot of the building, he saw that a truck was blocking his exit from the lot. Frank, who was employed by his father as a maintenance man, had arrived in the truck a short time earlier to collect rubbish. Harrison asked Frank to move his truck, and Frank asked Harrison why he had failed to report a leak in his apartment which had caused water to seep into the unit below his. Harrison denied knowledge of the leak, and a shouting match ensued. It quickly escalated into a physical altercation with "both individuals touch[ing] the other with their

---

in, or is causing substantial damage to, the controlled rental unit, or is creating a substantial interference with the comfort, safety, or enjoyment of the landlord or other occupants of the same or any adjacent accommodation; . . . (10) the landlord seeks to recover possession for any other just cause, provided that his purpose is not in conflict with the provisions and purposes of this act."

[3] Driscoll did not appeal from the board's denial of his application to evict for nuisance.

[4] We do so on the basis of the two-fold inquiry set out in *Mayo* v. *Boston Rent Control Admr.,* 365 Mass. 575, 577 (1974).

finger in a light pushing fashion." The "light pushing," as well as the shouting, ended when Harrison took a four-foot closet pole from the trunk of his car and hit Frank in the shoulder with it.

As to this entire episode, the judge found that neither of the men had been justified in touching the other, irrespective of who may have been the instigator, although the incident would not have occurred had Frank walked away from the argument and moved his truck. Focusing on the battery with the pole, the judge found that he was "not prepared to find with any degree of certainty that Mr. Harrison did not believe that he was in physical danger and was attempting to defend himself." He further found that "[i]n retrospect, it appears likely that Mr. Harrison used excessive force" in striking Frank with the pole.[5] On the basis of these findings, the judge concluded that there was no just cause to evict Harrison because the parties had had a long and harmonious relationship but for this "isolated incident" which was partly Frank's fault and because a recurrence was improbable.

The sole question presented on these facts is whether Harrison's use of excessive force in defending himself against Frank constitutes just cause for his eviction under § 9(a)(10). Driscoll contends that just cause must be construed broadly to include any reason advanced by a landlord in good faith to protect an economic or property interest, so long as it does not conflict with the purposes of the rent control legis-

---

[5] Harrison's testimony on the issue of self-defense was to the effect that due to a recent leg injury, he was afraid of anyone who pushed him "at that time" and that he took the pole out of the trunk of his car because "it was necessary at that time to protect" himself. Harrison described his blow with the pole as of such range and force that "if [Frank] had dodged the blow he probably would have got hit on the head and the blow would have killed him." Frank received medical treatment and missed four days of work due to the soreness in his arm. The force used by Harrison to protect himself against Frank's light pushing with his finger was clearly excessive. See *Commonwealth* v. *Shaffer*, 367 Mass. 508, 511-512 (1975); *Commonwealth* v. *Barton*, 367 Mass. 515, 518 (1975).

lation.[6] Compare *Gentile* v. *Rent Control Bd. of Somerville*, 365 Mass. at 343, and *Zussman* v. *Rent Control Bd. of Brookline*, 367 Mass. 561 (1975), with *Mayo* v. *Boston Rent Control Admr.*, 365 Mass. 575 (1974). Harrison argues that the legislative purposes of rent control will be frustrated unless the reasons for which a landlord can evict a tenant are strictly limited, and, thus, just cause cannot be interpreted to permit an eviction for the conduct which was found not to rise to the level of a nuisance under § 9(a)(3).

Even if we accept the tenant's argument that an isolated incident of misconduct cannot be a basis for an eviction under § 9(a)(3), we nevertheless can scrutinize the tenant's conduct under § 9(a)(10). A contention to the contrary was rejected in *Gentile* v. *Rent Control Bd. of Somerville*, 365 Mass. at 347: "Accepting the plaintiff's contention that the late payment of rent is not included within the language of subsection (1), a point which we need not decide, we see no conflict in including within the 'other just cause[s]' of subsection (10) chronic late payment of rent, a situation which could be substantially more adverse to the landlord's interest than nonpayment of a single rental obligation." Further, those cases which the tenant cites in support of his contention that a tenant cannot be evicted under § 9(a)(10) for a single episode of misconduct are inapposite. Evictions in those cases were sought on the grounds of nuisance pursuant to statutes and regulations making no provisions for just cause or a comparable basis. See *Sam Priceman Constr. Co.* v. *Goldstein*, 183 Misc. 171 (N.Y. Sup. Ct. 1944);[7]

---

[6] "From the plain language of § 1 [St. 1970, c. 842] it is clear that one of the principal purposes of the act is to preserve and expand the supply of housing for families of low and moderate income." *Mayo* v. *Boston Rent Control Admr.*, 365 Mass. at 580.

[7] In *Sam Priceman Constr. Co.* v. *Goldstein*, 183 Misc. at 171-172, the court, while finding in the tenant's favor on the landlord's nuisance allegations and reversing the order of eviction, specifically noted that the landlord failed to prove an alternative basis for the eviction, i.e., that he had been issued a certificate allowing him to commence eviction proceedings on the ground that the tenant was an objectionable person under Rent Regulation for Housing in New York City Defense — Rental Area, § 6, subdivision (b), par. (1); 8 Fed. Reg. 13918 (1943).

*DiLella* v. *O'Brien,* 187 Misc. 922 (N.Y. City Court of Albany, 1946). See also 65 McKinney's Unconsol. Laws § 8585 (1)(a) through (f) inclusive; New York City Rent And Rehabilitation Law, 451-6.0(a).

While the words "just cause," "good cause" or "due cause" take on different colorations when viewed in the context of the nature of the proceeding in which they are invoked as a basis for terminating a legal relationship, they have long been understood to mean "any ground which is put forward . . . in good faith, and which is not arbitrary, irrational, unreasonable, or irrelevant." *Davis* v. *School Comm. of Somerville,* 307 Mass. 354, 362 (1940). See also *Amoco Oil Co.* v. *Dickson,* 378 Mass. 44, 47-48 (1979), for a collection of cases defining "just cause," "due cause," and "good cause." This standard is employed also in public housing eviction proceedings.[8] As used in § 9(a)(10), "just cause" has its usual and plain common sense meaning. Thus, while recurrent misconduct may constitute just cause, so too may an isolated incident.

The facts that the episode was an isolated one, that it was caused in part by Frank, and that it is unlikely to recur, do not diminish the tenant's misconduct: he used excessive force and committed a serious act of violence.[9] A landlord's wish to remove a tenant who acted in such a manner against his son and employee while in the performance of his duties

---

[8] See *Spence* v. *Reeder,* 382 Mass. 398, 420 (1981) ("We assume any eviction [from public housing] must be based on good cause reasonably related to the protection of some legitimate interest of the public landlord"). See also *Bogan* v. *New London Housing Authy.,* 366 F.Supp. 861, 868 (D. Conn. 1973) ("The phrase [just cause] means that public landlords may not evict for arbitrary, discriminatory or otherwise manifestly improper reasons"); *Williams* v. *White Plains Housing Authy.,* 62 Misc. 2d 613, 617 (N.Y. Sup. Ct. 1970) ("The tenants' need for decent low rent housing is subject only to their compliance with reasonable regulations and the payment of rent. This doesn't mean, of course, that a public authority is powerless to evict a tenant. It may do so if the tenant's conduct is dangerous, destructive or harmful to others, but its eviction must not be arbitrary or based upon mere whim or caprice").

[9] Under G. L. c. 265, § 15A, such conduct is punishable by imprisonment for a period up to ten years.

related to the property is neither arbitrary and capricious nor irrelevant. Additionally, there is no evidence to suggest that Driscoll acted in bad faith or for a reason in conflict with the purpose of the Rent Control Act in seeking Harrison's eviction. While the eviction will result in the decontrol of Harrison's unit, Driscoll's uncontradicted testimony shows that he was not motivated by this fact to commence eviction proceedings. Driscoll receives two hundred twenty dollars a month for each of the four controlled units; the rentals on the remaining twelve apartments range from two hundred thirty-five dollars to two hundred seventy-five dollars a month. In his twenty-three years as a landlord, Driscoll has initiated only three eviction actions, including the present case, which is his first eviction resulting in decontrol of the unit vacated.

Although Harrison has been beyond reproach as a tenant for many years with this one grave exception, rent control legislation does not vest him with a right to engage in more than one serious incident of misconduct before he can be evicted. Driscoll has acted with just cause and for a purpose not in conflict with the Rent Control Act.

The judgments are reversed and the matters are remanded to the Boston Division of the Housing Court Department for the entry of a judgment in Driscoll's favor on his summary process complaint and for the entry of a judgment affirming the decision of the rent board of Boston on Harrison's appeal therefrom.

*So ordered.*