ERWIN D. HARRIS *vs*. BOARD OF TRUSTEES OF STATE COLLEGES
& others.[1]

Suffolk. February 8, 1989. — August 8, 1989.

Present: LIACOS, C.J., WILKINS, ABRAMS, NOLAN, & LYNCH, JJ.

*Employment*, Termination. *Contract*, Employment. *Administrative Law*,
Judicial review. *State Administrative Procedure Act. Due Process of
Law*, Employment, Hearing. *Constitutional Law*, Freedom of speech
and press. *Judge. Words*, "Just cause."

A plaintiff was entitled to de novo consideration of his Federal civil rights
    claims arising from his dismissal from a tenured faculty position at a
    State college, and a judge erred in treating those claims as presenting
    merely a request for judicial review of the administrative proceedings
    that led to the plaintiff's dismissal. [519-520]
A State college's grant of tenure to a faculty member, which included in
    its terms that he could only be dismissed for "just cause," created a
    Federal, constitutionally protected property right in his continued em-
    ployment. [520]
A tenured faculty member dismissed from his position at a State college
    was afforded his Federal due process rights in pretermination proceedings
    before the college's faculty status committee [520-521], as well as in
    posttermination proceedings before the Board of Trustees of State Col-
    leges and that board's personnel committee [521-522].
On a Federal civil rights claim by a tenured faculty member dismissed from
    his position at a State college, the plaintiff did not meet his initial burden
    of demonstrating that certain public statements he had made concerning
    the quality of education at the college were a substantial or motivating
    factor in the decision to dismiss him. [522-524]
On a claim under G. L. c. 30A, the State Administrative Procedure Act,
    seeking judicial review of action by the Board of Trustees of State
    Colleges removing the plaintiff from a tenured faculty position, the judge
    correctly ruled that the applicable statute, G. L. c. 73, § 16, gave the
    board plenary authority over the plaintiff's appointment and retention

---

[1] President of Bridgewater State College, Bridgewater State College,
Board of Regents of Higher Education, and Trustees of Bridgewater State
College. We note that under St. 1980, c. 329, §§ 111-112, the Board of
Regents of Higher Education replaced the Board of Trustees of State Col-
leges.

[524-526], and the judge was warranted in upholding the board's conclusion that the plaintiff's conduct had rendered him unfit to remain in his position [526].

In the circumstances of an action challenging the plaintiff's dismissal from a tenured faculty position at a State college, neither the judge's remarks during a pretrial conference, which were not indicative of bias, nor his alleged ex parte communications with officials of the State college system, through which he did not appear to have received information concerning any undisclosed facts, required that the judge allow the plaintiff's motion for his recusal. [527-528]

CIVIL ACTION commenced in the Superior Court on December 5, 1977.

The case was heard by *John L. Murphy, Jr.,* J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Larry Engelstein* for the plaintiff.

*Morris M. Goldings* (*Richard S. Jacobs* with him) for the defendants.

LIACOS, C.J. The plaintiff, a tenured professor at Bridgewater State College, brought a complaint alleging that the defendants dismissed him in violation of his constitutional rights to due process of law and to free speech. He alleged further that his employment as a tenured professor at a public institution was terminated without just cause, and in violation of his employment contract. A judge of the Superior Court dismissed all but the plaintiff's contract claim. The plaintiff appealed and we transferred the case to this court on our own motion.

We summarize the relevant procedural history. On May 27, 1976, the plaintiff, a physics professor on the Bridgewater State College faculty, received a letter notifying him of certain charges against him.[2] The letter informed him that on June 8,

---

[2] The letter states the following charges against the plaintiff: "You have committed serious breaches of professional ethics in violation of the Principles of Professional Ethics as outlined by the American Association of University Professors and subscribed to by Bridgewater State College. (Faculty Handbook, pages 9-10) The specific events which give rise to this charge include the following:

"I. Violation of obligation to exercise critical self- discipline and judgment

1976, a hearing would be held before the faculty status committee (FSC) of the college to determine whether the plaintiff should be dismissed as a faculty member.[3]

and to practice intellectual honesty.

"1. On April 8, 1976, you stated, falsely to [a member of the faculty and a staff member], that you had applied for a gun permit. You further stated that if you had had a gun in your possession on that day that you would have used it with regard to the incident which allegedly occurred earlier that day in which you were squirted with a water gun by a fraternity pledge.

"2. You requested, on or about May 6, 1976, that the District Court of Brockton issue a complaint for criminal assault against a student . . . for an event which occurred on April 2, 1976 in which said student allegedly expressed a desire to strike you but did not do so. You caused a hearing to be scheduled on this matter at the Brockton District Court for May 25, 1976 and then misrepresented to the Court, by a telephone call on May 24, 1976, that the parties were attempting to settle the matter and desired to continue the case for one month. [None of the] witnesses to the alleged assault, were contacted by you with regard to either settlement or postponement of this matter. They appeared at the hearing at the Brockton District Court on May 25, 1976, and the Clerk of the Court, after taking testimony from them dismissed your application for a complaint for criminal assault.

"II. Failure to show due respect for and to be objective in your professional judgment of your colleagues in the Department of Physics. The specific events which give rise to this charge include the following:

"1. You have made public remarks to your students in the course of teaching of your physics classes with regard to the competence of other members of the Physics faculty;

"2. You have made unobjective and disrespectful comments, on numerous occasions, to Physics faculty members and Bridgewater State College administrators with regard to other members of the Physics faculty.

"III. Failure to demonstrate respect for the student as an individual. The specific events which give rise to this charge include the following:

"1. You have made public comments in your physics classes belittling non-physics majors as intellectually deficient.

"2. You have failed to establish reasonable rapport with the Bridgewater State College physics majors.

"3. You have threatened to sue a specific physics major . . . with regard to the issue of student evaluation forms and have communicated with him in an improper manner instead of discussing the matter with the chairperson of your department . . . .

"B. As a result of the breaches referred to above, you have promoted an atmosphere in which the physics majors are seriously demoralized and the other members of the physics faculty and staff are profoundly disturbed about your disruptive, antagonistic and unprofessional behavior such that the current atmosphere in the Physics Department is one of turmoil and demoralization."

[3] The college's policy provides the following with respect to the removal of a tenured faculty member: "A tenured person, without regard for the

Harris v. Board of Trustees of State Colleges.

Prior to June 8, 1976, the plaintiff requested a continuance so that he could have more time to prepare a defense and because the attorney of his choice was not available. This request was denied. The FSC, composed of tenured professors from the faculty and representatives of the college administration, held the hearing on June 8 and 9, 1976. The plaintiff was present. The college presented fifteen witnesses. The plaintiff declined to cross-examine any of them or present his own evidence. The twelve-member FSC unanimously voted on June 9 to recommend that the plaintiff be removed from his tenured position. On June 10, 1976, with the FSC recommendation before it, but without transcripts or findings, the board of trustees of the State Colleges of the Commonwealth (board) voted to accept the recommendations of the FSC. The board notified the plaintiff on that date that he could appeal the decision to the personnel committee of the board, which would hold a full hearing at the plaintiff's request. The committee, composed of members of the board, held eight days of hearings from August 17, 1976, to June 24, 1977. This proceeding was treated as an appeal, and the burden of proof was placed on the plaintiff, who, with the benefit of counsel, presented forty-five witnesses and four affiants. The college did not call any witnesses, but put in evidence the transcript and exhibits from the FSC hearing. The personnel committee recommended to the board that the appeal be denied, which recommendation the board accepted.

means through which he attained tenure, shall not be removed from his position except for just cause and through due process. Removal of a tenured person shall be subject to the following procedures: (a) The person must be advised in writing at least ten days in advance of any hearing of the charges to be presented. (b) The charges must be presented at a hearing to a committee composed of tenured peers from the faculty and representatives from the College administration. The person may be represented by counsel. (c) The recommendation of this committee must be forwarded to the Board of Trustees with all necessary records. (d) On written request of the individual, the Board of Trustees will grant the individual a full hearing. (e) The individual will be given at least thirty days notice of the hearing with the Board of Trustees. He may be represented by counsel. (f) A transcript of the proceedings of all hearings will be made available to the individual upon written request."

The plaintiff commenced this action for declaratory relief on December 5, 1977, claiming a violation of due process. On January 31, 1980, the plaintiff amended his complaint, adding claims for violations of free speech and due process rights under 42 U.S.C. § 1983, as well as a claim for breach of contract. On March 1, 1984, the plaintiff filed a third amended complaint. The plaintiff filed a motion for partial summary judgment, and the defendant filed a cross motion for summary judgment, both of which were denied. The plaintiff moved for a trial or evidentiary hearing.[4] In November, 1986, the judge entered judgment for the plaintiff on his breach of contract claim (see note 7, *infra*) and dismissed the plaintiff's constitutional claims.

1. *Standard of Review.*

The judge treated the plaintiff's entire cause of action as a request for review under G. L. c. 30A (1988 ed.), the State Administrative Procedure Act (APA), citing § 14 of the APA as authority allowing for a review of the plaintiff's constitutional claims.

Although the judge's review of the State law claims under G. L. c. 30A was proper, his reformulation of the plaintiff's § 1983 claims into a c. 30A review request was erroneous. As to the § 1983 claims, if the plaintiff had brought his cause of action in a Federal court, he would have been entitled to de novo consideration of his Federal claims. *Holley* v. *Seminole County School Dist.*, 755 F.2d 1492, 1501-1502 (11th Cir. 1985). The plaintiff's decision to sue in State court does not deprive him of the Federal law which governs § 1983 actions. While State courts have concurrent jurisdiction in § 1983 actions, Federal law applies. *Rzeznik* v. *Chief of Police of Southampton*, 374 Mass. 475, 484-485 n.8 (1978). *Maine* v. *Thiboutot*, 448 U.S. 1, 11 n.12 (1980).

Despite the judge's error as to the § 1983 claims, we may resolve the questions of law which are presented by the case. The plaintiff submitted to the judge a statement of material facts for trial and an offer of proof. We view the proposed

[4] The plaintiff did not request a trial before a jury.

evidence in a light most favorable to the plaintiff, in order to determine whether a reasonable fact finder could find for the plaintiff. See *von Henneberg* v. *Generazio*, 403 Mass. 519, 520 (1988). See also *Alholm* v. *Wareham*, 371 Mass. 621, 623 (1976); P.J. Liacos, Massachusetts Evidence 14, 46 (5th ed. 1981 & 1985 Supp.).

2. *Due Process Claims.*

The plaintiff claims that the procedure utilized by the college deprived him of due process of law under the Fourteenth Amendment to the United States Constitution. We disagree.

As an initial matter, we observe that the college's grant of tenure to the plaintiff, which included in its terms that he could be dismissed only for "just cause," created a constitutionally protected property right in his continued employment. See *Cleveland Bd. of Educ.* v. *Loudermill*, 470 U.S. 532, 538-539 (1985). *Regents of State Colleges* v. *Roth*, 408 U.S. 564, 576-578 (1972). The plaintiff contends that neither the pretermination nor posttermination proceedings satisfied the requirements of due process.

a. *Pretermination.*

The Supreme Court, in *Cleveland Bd. of Educ.* v. *Loudermill, supra* at 546, set forth the minimum due process required prior to the termination of a tenured public employee: "The essential requirements of due process . . . are notice and an opportunity to respond. . . . The tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." This process can be " 'something less' than a full evidentiary hearing" and it "need not definitively resolve the propriety of the discharge. It should be an initial check against mistaken decisions . . . ." *Id.* at 545. The Court based its holding on the assumption that postdeprivation hearings would be available to the individual whose employment had been terminated. *Id.* at 546.

The hearing before the FSC satisfied the requirements of *Loudermill.* The notice given to the plaintiff provided him with an adequate opportunity to respond. The plaintiff was made aware of the charges against him, was given details as to the

factual basis of the charges, and was given an opportunity to respond to the charges and to cross-examination witnesses. The FSC acted within its discretion in refusing to grant the plaintiff's request for a continuance.[5] We conclude that the full hearing before the FSC provided the plaintiff with all of the pretermination process to which he was entitled. See *Riggins* v. *Regents of the Univ. of Neb.*, 790 F.2d 707, 710-711 (8th Cir. 1986); *Brasslett* v. *Cota*, 761 F.2d 827, 836 (1st Cir. 1985).[6]

b. *Posttermination.*

The plaintiff also challenges the posttermination process which he received.[7] While the required process may vary according to the nature of each case, *Mathews* v. *Eldridge*, 424 U.S. 319, 333 (1976), a number of Federal circuit courts have agreed on certain safeguards that together ensure due process in cases involving the termination of a tenured individual's employment. They are "(1) clear and actual notice of the reasons for termination in sufficient detail to enable him or her to present evidence relating to them; (2) notice of both the names of those who have made allegations against the teacher and the specific nature and factual basis for the charges; (3) a reasonable time and opportunity to present testimony in his or her own defense; and (4) a hearing before an impartial board or tribunal." *Riggins* v. *Regents of the Univ. of Neb.*, *supra* at 712. See *Rosewitz* v. *Latting*, 689 F.2d 175, 177 (10th Cir. 1982); *Ferguson* v. *Thomas*, 430 F.2d 852, 856 (5th Cir. 1970).

---

[5] It has been held that there is no constitutional right to an attorney at a hearing of this type. See *Rosewitz* v. *Latting*, 689 F.2d 175, 177-178 (10th Cir. 1982); *Downing* v. *LeBritton*, 550 F.2d 689, 691-692 (1st Cir. 1977).

[6] The plaintiff's claim that two members of the FSC were biased because they were previously involved in his case is unsupported on the record before us. See *Hortonville Joint School Dist. No. 1* v. *Hortonville Educ. Ass'n*, 426 U.S. 482, 491-494 (1976).

[7] The judge below found that the board's initial decision on June 10, 1976, to terminate the plaintiff's employment without review of the record before the FSC was invalid because it was made in contravention of the board's removal policy and of the requirements of G. L. c. 30A, § 11 (7). The judge ordered the board to pay the plaintiff's salary and benefits from September 1, 1976, to November 2, 1977, when the final decision of the board, made after proper hearing, went into effect. That portion of the order was not appealed by either party.

The plaintiff, at the time of the posttermination hearing before the personnel committee of the board, had been apprised of the details behind the charges against him, of the witnesses against him, and had been given a reasonable time and opportunity to present his own defense.

The plaintiff claims that the personnel committee was not impartial because it was reviewing its own previous decision to dismiss the plaintiff. A similar claim of bias was rejected in *Vanelli* v. *Reynolds School Dist. No. 7*, 667 F.2d 773, 780 n.12 (9th Cir. 1982). See *Brasslett* v. *Cota, supra* at 837. There has been no additional showing of actual bias to support a claim of lack of impartiality. See *Hortonville Joint School Dist. No. 1* v. *Hortonville Educ. Ass'n*, 426 U.S. 482, 491-494 (1976); *Withrow* v. *Larkin*, 421 U.S. 35, 47, 54-55 (1975); *Brasslett* v. *Cota, supra*.

Additionally, it was not constitutionally improper to place the burden of proof on the plaintiff at his appeal before the personnel committee. See *Vanelli* v. *Reynolds School Dist. No. 7, supra*. See also *Chung* v. *Park*, 514 F.2d 382, 386-387 (3d Cir.), cert. denied, 423 U.S. 948 (1975). The admission of the transcript of the FSC hearing by the personnel committee also did not violate due process principles. See *Riggins* v. *Regents of the Univ. of Neb., supra* at 711-712; *Rosewitz* v. *Latting, supra* at 177. See also *LaPointe* v. *License Bd. of Worcester*, 389 Mass. 454, 458 (1983). The plaintiff was free to call any of the witnesses who testified at that hearing.

In summary, the plaintiff has not offered any evidence which would permit a reasonable fact finder to conclude that he has been deprived of due process under the Fourteenth Amendment.[8]

3. *First Amendment Claim.*

The plaintiff claims that the defendants retaliated against him for making critical public statements concerning the quality

---

[8] With regard to the plaintiff's argument that a quorum of the personnel committee was not present at all of the hearing sessions, it is sufficient for due process purposes that a quorum of the committee reviewed the testimony and that a quorum exercised its statutory authority in recommending the denial of the plaintiff's appeal. See *Barszcz* v. *Trustees of Community*

of education at Bridgewater State College. The plaintiff criticized the college for failing to prepare its students with practical skills for the job market. He appeared at a hearing before the Subcommittee on Equal Opportunities of the Committee on Education and Labor of the United States House of Representatives in November, 1975; at an open meeting on higher education in January, 1976; and at a hearing before the Brockton city council in March, 1976. In *Mount Healthy City Bd. of Educ.* v. *Doyle*, 429 U.S. 274, 287 (1977), the Supreme Court articulated the standard of proof which governs claims of retaliation against protected speech. The plaintiff initially bears the burden of demonstrating that his conduct was constitutionally protected, and that his conduct was a "substantial factor" or "motivating factor" in the defendants' decision to dismiss him. When the plaintiff has met this burden, the burden shifts to the defendants to show "by a preponderance of the evidence that [they] would have reached the same decision . . . even in the absence of the protected conduct." *Id.*

A review of the record reveals that the plaintiff has not met his initial burden of showing that his speech was a substantial or motivating factor in the board's dismissal decision. Courts are generally wary of deciding issues of motivation on a pretrial motion. See *Munson* v. *Friske*, 754 F.2d 683, 690 (7th Cir. 1985). However, in this case, the record does not support a finding that the plaintiff's speech played any role in the board's decision. See *Setliff* v. *Memorial Hosp.*, 850 F.2d 1384, 1393 (10th Cir. 1988); *Leachman* v. *Rector & Visitors of the Univ. of Va.*, 691 F. Supp. 961, 966 (W.D. Va. 1988). In the plaintiff's offer of proof and lengthy statement of material facts for trial, he fails to point to any fact which, if established, would support the finding of a causal link between his speech and his dismissal.[9] A reading of the record demonstrates that neither

---

*College Dist. No. 504*, 400 F. Supp. 675, 679-680 (N.D. Ill. 1975), aff'd, 539 F.2d 715 (7th Cir. 1976), cert. dismissed, 429 U.S. 1080 (1977). The plaintiff has shown no facts to the contrary.

[9] The plaintiff's citation to vague references in the hearing transcript to a Brockton newspaper article does not support his case. The plaintiff has failed to reproduce that article in the record.

the FSC nor the board relied on the plaintiff's public statements in reaching their decision.[10]

4. *Just Cause.*

The plaintiff claims that the judge applied an incorrect legal standard of "just cause." The policy handbook provided that a tenured person "shall not be removed from his position except for just cause." The handbook did not define "just cause." The plaintiff cites no relevant Massachusetts authority to give us guidance. Since we have concluded his constitutional claims have no merit, we examine this matter under State law only.

The meaning of "just cause" varies depending upon the context in which it is used. See *Spence* v. *Gormley*, 387 Mass. 258, 263-264 (1982); *Driscoll* v. *Harrison*, 11 Mass. App. Ct. 444, 448 (1981). We are well aware of the importance of tenure in the American system of higher education. See generally Note, The Role of Academic Freedom in Defining the Faculty Employment Contract, 31 Case W. Res. L. Rev. 608, 628, 655 (1981). Tenure provides a professor the security to speak his or her mind without fear of reprisal. Were we free to do so, we might agree with the plaintiff that a standard, higher than a loose rationality test, should govern in cases involving tenured university professors in public universities.

We believe, however, that the judge was correct in concluding that, absent an applicable collective bargaining agreement defining the term "just cause" otherwise, the statutory language must prevail. The judge ruled correctly that: "Massachusetts G. L. c. 73, § 16 entrusts to the Board of Trustees of State Colleges 'complete authority with respect to the election or appointment of the professional staff including terms, conditions and periods of employment, compensation . . . and dismissal.' This grant of plenary authority was reaffirmed in St. 1965, c. 572, § 44, which states that '[t]he professional staff

---

[10] We reject the plaintiff's intimation that his disrespectful remarks to other faculty members, his belittling of "non-physics majors," or the other spoken words which formed the basis of charges against him related to "issues of public concern" and were thus protected speech under the First Amendment. See *Connick* v. *Myers*, 461 U.S. 138 (1983); *Boehm* v. *Foster*, 670 F.2d 111, 113 (9th Cir. 1982); *Chitwood* v. *Feaster*, 468 F.2d 359, 360-361 (4th Cir. 1972).

of . . . the departments of education and the state colleges shall serve at the pleasure of their respective boards.' This has been interpreted to mean that the professional staff shall serve 'without benefit of statutory tenure provisions.' *Rennert* v. *Board of Trustees of State Colleges*, 363 Mass. 740, 744 (1973). (The 'statutory tenure provision' referred to here is G. L. c. 73, § 4B.) . . .

"In addition, the Board 'may adopt, amend or repeal such rules and regulations for the government of any such college, for the management, control and administration of its affairs, *for its faculty*, students and employees, and for the regulation of their own body, as they may deem necessary' (emphasis added). G. L. c. 73, § 1.

"Pursuant to this grant of authority, the Board has enacted regulations governing the appointment and removal of tenured faculty in the state colleges. Since Harris became a tenured professor in 1973, he was subject to the Board's policy of 'Removal of Tenured Person.' In relevant part, the policy states that '[a] tenured person, without regard for the means through which he attained tenure, shall not be removed from his position except for just cause.' Although the policy does not define 'just cause', certain statutes and court cases provide meaning to this crucial phrase."

In *Rinaldo* v. *School Comm. of Revere*, 294 Mass. 167, 169 (1936), the court, referring to similar statutory language (G. L. c. 71, § 42) stated: "Good cause includes any ground which is put forward by the [board] in good faith and which is not arbitrary, irrational, unreasonable, or irrelevant to the [board's] task of building up and maintaining an efficient school system." In *Rennert* v. *Trustees of State Colleges*, *supra* at 745, we stated: "It is not for this court to rule on the wisdom of tenure policy for State educational institutions." Consistent with this approach is *McEnteggart* v. *Cataldo*, 451 F.2d 1109, 1111 (1st Cir. 1971), cert. denied, 408 U.S. 943 (1972), where, as to a nontenured professor at a State college, the court stated that the decision of the board of trustees will be upheld unless each of the stated reasons for termination "is trivial, or is unrelated to the educational process or to working relationships

within the educational institution." See *Drown* v. *Portsmouth School Dist.*, 451 F.2d 1106, 1108 (1st Cir. 1971).

We believe the judge was warranted in concluding that the board's findings supported the conclusion that the plaintiff had engaged in personal conduct which impaired his ability to fulfil his institutional responsibilities and thus related to his professional fitness. Some of the charges against the plaintiff, when viewed in isolation, may not support a finding of just cause for dismissal. However, in the circumstances of this case, the plaintiff had engaged in a pattern of behavior which, when viewed as a whole, supported a conclusion that he was unfit to remain a tenured faculty member. See *Springgate* v. *School Comm. of Mattapoisett*, 11 Mass. App. Ct. 304, 309 (1981). There was evidence, among other things, that the plaintiff repeatedly belittled his students, falsely stated that he had applied for a permit to carry a gun to protect himself against a squirt-gun toting student and constantly harassed his fellow faculty members, administrators, and support staff. We conclude that the board acted within its discretionary authority under G. L. c. 73, § 16.[11] See *Howard Johnson Co.* v. *Alcoholic Beverages Control Comm'n*, 24 Mass. App. Ct. 487, 492 (1987).

5. *Motion for Recusal.*

The plaintiff argues that the judge's refusal to recuse himself was erroneous. We disagree.

The plaintiff asserted in his affidavit supporting the motion to recuse that the judge stated at a pretrial conference on October 16, 1985, that the plaintiff was entitled to limited relief on back pay and that he had not suffered any constitutional or contractual violations. The affidavit also alleged that the judge had stated that "his view of the state college tenure system and the just cause standard was based in part on . . . discussions with deans or other officials in the state college system." In addition, according to the plaintiff's affidavit, the judge asked

---

[11] The plaintiff's reliance on *Matter of Murdock*, 7 Pick. 303 (1829), is misplaced. In that case, there was no "allegation of actual existing mischief." *Id.* at 331. Here, there are allegations that the plaintiff's behavior led to "turmoil and demoralization." See note 2, *supra*.

plaintiff's counsel if the plaintiff had been mentally ill before his dismissal.

"Article 29 of the Massachusetts Declaration of Rights requires that judges be 'as free, impartial and independent as the lot of humanity will admit.' Under former S.J.C. Rule 3:25, Canon 3 (C) (1), 359 Mass. 842 (1972) (now Rule 3:09, Canon 3 [C] [1]), a judge 'should disqualify himself in a proceeding in which his impartiality might reasonably be questioned.' However, '[n]ot every contention of bias or partiality is entitled to be honored by a judge, or a hearing officer.' *Police Comm'r of Boston* v. *Municipal Court of the W. Roxbury Dist.*, 368 Mass. 501, 508 (1975), and cases cited. Bias requiring disqualification must ordinarily arise from an extrajudicial source. See *Kennedy* v. *District Court of Dukes County*, 356 Mass. 367, 379 (1969). In general, the question of disqualification is left to the judge's discretion. *Commonwealth* v. *Coyne*, 372 Mass. 599, 602 (1977), citing *Commonwealth* v. *Leventhal*, 364 Mass. 718, 722 (1974), and cases cited." *Commonwealth* v. *Gogan*, 389 Mass. 255, 259 (1983).

The judge was within his discretion in denying the motion to recuse himself. With respect to the judge's question as to whether the plaintiff had suffered any mental illness in the past, there is no allegation that the basis of this question was extrajudicial, and there is information in the record which provided a basis for the question. Considering that the plaintiff claimed to be suffering from anxiety after his discharge, we do not consider the judge's question to reveal any lack of impartiality. See *Commonwealth* v. *Dane Entertainment Servs., Inc.*, 18 Mass. App. Ct. 446, 449-450 (1984).

The plaintiff claims that the judge engaged in an ex parte communication with officials of the State college system. While we deem ex parte communications on substantive matters to be inappropriate, we are not persuaded by the plaintiff's submissions that such an ex parte communication occurred. Even were we to assume it, arguendo, it does not appear that the judge received information concerning any undisclosed facts. See *Massachusetts State Pharmaceutical Ass'n* v. *Rate Setting Comm'n*, 387 Mass. 122, 133-134 (1982); *Perez* v. *Boston*

*Hous. Auth.*, 379 Mass. 703, 741 (1980). Cf. *Duro* v. *Duro*, 392 Mass. 574, 576 n.4 (1984).

Finally, with regard to the judge's intimations as to the probable disposition of the case, such remarks, made in the course of a pretrial conference, were not improper and do not support a claim of bias. See *Perez* v. *Boston Hous. Auth.*, *supra* at 740-741.

*Judgment affirmed.*