COMMONWEALTH *vs.* STEVEN M. CLERICO.

No. 91-P-244.

Suffolk. December 16, 1991. - October 8, 1993.

Present: ARMSTRONG, DREBEN, & IRELAND, JJ.

*Practice, Criminal,* Plea, Judicial discretion, New trial, Agreement be-
tween prosecutor and defendant, Disqualification of judge. *Judge.*

The record of the plea colloquy in a criminal case demonstrated that the
defendant entered his plea freely and knowingly after the judge un-
equivocally rejected the agreed upon sentence recommendation [412-
414], and there was no basis for a claim that the defendant's attorney
misadvised him on the sentence he would receive [414].

The record of the plea colloquy in a criminal case did not show any unfair-
ness or bias on the part of the judge or any reason for the judge's dis-
qualification. [414-416]

COMPLAINTS received and sworn to in the Chelsea Division
of the District Court Department on April 14, 1989.

On appeal to the jury session of the Boston Municipal
Court Department, pleas of guilty were accepted by *Sally A.
Kelly,* J., and motions for a new trial and for recusal were
heard by her.

*Elliot M. Weinstein* for the defendant.

*James P. McKenna,* Assistant District Attorney (*Robert
N. Tochka,* Assistant District Attorney, with him) for the
Commonwealth.

IRELAND, J. The defendant pleaded guilty in the Boston
Municipal Court to two counts of motor vehicle homicide by
negligent operation and received a sentence greater than he
had anticipated he would receive. The defendant filed mo-
tions for a new trial and for the recusal of the judge, which
were denied. The defendant appeals, claiming that (1) the
pleas were not made intelligently and voluntarily due to inef-
fective assistance of counsel, and (2) the trial judge was bi-

ased against the defendant and should have recused herself
from the postconviction proceedings. We affirm.

1. *The facts.* On February 1, 1989, Annette Marson and
her son William Marson were struck and killed by an auto-
mobile driven by the defendant. After an initial bench trial
in Chelsea District Court, the defendant was convicted on
two counts of motor vehicle homicide by negligent operation
and sentenced to two consecutive terms of two and one-half
years, with nine months to serve on each count.

The defendant appealed for a trial de novo before a jury of
six in the Boston Municipal Court. The day after trial com-
menced, the defendant indicated that he wanted to change
his plea. Both the prosecutor and defense counsel informed
the judge that there would be a joint sentence recommenda-
tion of one year to be served concurrently on each count of
motor vehicle homicide. The victims' family, represented by
independent counsel, agreed to the recommended sentence.

In three separate colloquies the judge said she would ex-
ceed the recommended sentence. To defense counsel, the
judge said she would entertain a guilty plea only if the de-
fendant would acknowledge that the judge would in all likeli-
hood exceed the Commonwealth's recommendation and that
the defendant would not be able to withdraw his plea.[1] When
asked by defense counsel what would be the likelihood of ex-
ceeding the recommended sentence, the judge responded,
"Great. I know nothing about [the defendant.] I haven't
heard from the families of the two dead people, and that, of
course, would color any action I take, but one year does not
sound like much to this judge."

After discussion with counsel, the defendant moved to
change his pleas to guilty. Before the formal plea colloquy

---

[1] The judge specifically stated to defense counsel that she would enter-
tain a plea only if the defendant "will not appeal any sentence that I will
impose." From subsequent statements to defense counsel and to the de-
fendant during the plea colloquy, it is evident that the judge was referring
to the fact that once the defendant changed his plea and the jury were
discharged, he could not then withdraw his plea. The defendant was ad-
vised that his only right to appeal would be based on a claim of ineffective
assistance of counsel or involuntariness of the plea.

with the defendant, the judge inquired at length whether the defendant understood that the judge was likely to exceed the joint recommendation and that if the defendant pleaded guilty, he would not be allowed to withdraw his plea.[2] The

---

[2] The judge asked the defendant the following questions:

Q: "Do you understand that you are now in the midst of a jury trial?"

A: "Yes."

Q: "And do you understand that your attorney, Mr. Machera, has informed me that you want to give up your right to a jury trial and plead guilty to two counts of motor vehicle homicide?"

A: "Yes, I do."

Q: "Do you know that by pleading guilty, you are giving up the right to have a jury of six people decide whether you are guilty or not guilty?"

A: "Yes, I do."

Q: "Do you understand that initially, your attorney and [the prosecutor] asked me to accept your plea of guilty and impose a one-year committed sentence, concurrent, on each charge, do you understand that?"

A: "Yes, I do."

Q: "Do you understand that I informed [the prosecutor] and your lawyer, Mr. Machera, that I would not accept that sentence?"

A: "Yes, I do."

Q: "That there was a great likelihood that I would exceed it?"

A: "Yes."

Q: "That the only condition under which I would entertain a plea of guilty from you is if you understood and agreed that upon your plea, I could impose any sentence permitted by law?"

A: "Yes, I do."

Q: "Do you understand that that means I could impose a two-and-a-half-year sentence on each charge, to be served on and after?"

A: "Yes, I do."

Q: "So that the sentence could be two and a half years on one count and two and a half years, on and after, on the other count?"

A: "Yes, I do."

Q: "And is there any question in your mind, Mr. Clerico, about whether or not you want to plead guilty under those circumstances?"

A: "No, there is not."

Q: "Do you understand that I will not allow you to withdraw your plea of guilty and go back before the jury if you plead guilty?"

A: "Yes, I do."

Q: "And do you understand that there are other circumstances in other cases where defendants do have the right to plead, hear what the judge would do and then go before a jury by withdrawing their plea?"

A: "Yes, I do."

Q: "Do you understand that in this case, because the jury has already been impaneled, because we have been dealing with the case for several days, because we are in the midst of a jury trial, I will not allow you to withdraw your plea of guilty?"

judge subsequently conducted a formal guilty plea colloquy with the defendant designed to determine: (1) the factual basis for the defendant's plea; (2) whether the plea was voluntary; and (3) whether the defendant completely understood the constitutional rights which he waived by pleading guilty, the nature of the crimes charged, the maximum sentence that could be imposed, and the fact that the judge was not required or likely to accept the sentence recommended by the Commonwealth.[3] Upon completion of the colloquy, the judge accepted the plea and the prosecutor made the one-year sentence recommendation. The judge heard statements from the defendant's mother and from the victims' family. She then sentenced the defendant to consecutive terms of two and one-half years on each count, the maximum penalty permissible by statute.

The defendant filed a timely appeal. In the interim, a motion to revoke and revise the sentence was denied. Represented by new counsel, the defendant filed both a motion for new trial under Mass.R.Crim.P. 30(b), 378 Mass. 900 (1979), on the ground of ineffective assistance of counsel and a motion to recuse. A single justice of this court stayed the appeal proceedings initiated by trial counsel to allow for a hearing on the motion for a new trial. At the judge's suggestion, the defendant withdrew his motion for a new trial on the basis of ineffective assistance of counsel and his motion to recuse and substituted a new motion for a new trial on the general grounds that justice was not served. After a hearing on the substituted motion for a new trial in which members of the victims' family were again consulted, the judge denied the motion. The defendant renewed his motion for a new

---

A: "Yes, I do."
Q: "That you will be basically stuck with whatever sentence I impose?"
A: "Yes, I do."
Q: "Do you understand that?"
A: "Yes, I do, Your Honor."
Q: "Is there any question in your mind about that, Mr. Clerico?"
A: "No, there is not."
[3]At oral argument, appellate counsel conceded that the plea colloquy was "letter perfect."

trial due to ineffective assistance of counsel and filed a sup-
plemental motion to recuse the trial judge on grounds of un-
fairness and bias. The defendant appeals from the denial of
those motions. The appeal was consolidated with the one pre-
viously stayed.[4]

2. *Validity of guilty plea.* The appropriate vehicle for at-
tacking the validity of a guilty plea is a motion for a new
trial. *Commonwealth* v. *DeMarco,* 387 Mass. 481, 482
(1982). A trial judge upon written motion may grant a new
trial if it appears that justice may not have been done.
Mass.R.Crim.P. 30(b). The disposition of the motion for new
trial is within the sound discretion of the judge and "will not
be reversed unless it is manifestly unjust, or unless the trial
was infected with prejudicial constitutional error. Reversal
for abuse of discretion is particularly rare where the judge
acting on the motion was also the trial judge." *Common-
wealth* v. *Colantonio,* 31 Mass. App. Ct. 299, 302 (1991).
See also *Fogarty* v. *Commonwealth,* 406 Mass. 103, 110
(1989); *Commonwealth* v. *Moore,* 408 Mass. 117, 125
(1990).

A guilty plea may be deemed involuntary if the defendant
was incompetently advised. *Tollett* v. *Henderson,* 411 U.S.
258, 266-267 (1973). In deciding a claim of ineffective assis-
tance of counsel, we must ascertain whether there has been
"serious incompetency, inefficiency, or inattention of coun-
sel—behavior of counsel falling measurably below. that which
might be expected from an ordinary fallible lawyer—and, if
that is found, then, typically, whether it has likely deprived
the defendant of an otherwise available, substantial ground
of defence." *Commonwealth* v. *Saferian,* 366 Mass. 89, 96
(1974). The defendant claims that his plea of guilty was in-
valid because it resulted from improper and erroneous advice
given to him by his trial attorney, upon which he relied to his

---

[4]The defendant's new appellate counsel requested that we deem prede-
cessor counsel's brief on the appeal from the judgment withdrawn and pro-
ceed only upon his brief and appendix. Accordingly, predecessor counsel's
brief and appendix were struck. We proceed only upon those issues raised
by the defendant's current counsel.

detriment in deciding to plead. In essence, he alleges that defense counsel advised him that if he were to plead guilty, the judge would impose the agreed upon sentence recommendation of one year. The defendant believed that if the judge were to exceed the joint recommendation, he would be able to withdraw his plea of guilty and proceed with the trial. The defendant also argues that he received ineffective assistance of counsel when counsel failed to seek a pretrial ruling on the admissibility of certain evidence before the jury trial commenced.[5] Ruling on the defendant's motion for new trial, the judge found that the defendant "failed to establish through credible evidence that trial counsel guaranteed the defendant a certain sentencing result" if he entered a guilty plea. The judge further found that the pleas were made knowingly and voluntarily.

We reach a point not mentioned in the defendant's brief but which calls for clarification: namely, whether the judge failed to follow the procedure outlined in Mass.R.Crim.P. 12(c)(2), as amended, 399 Mass. 1215 (1987). According to rule 12(c)(2), "If there were sentence recommendations contingent upon the tender of the plea, the judge shall inform the defendant that he [or she] will not impose a sentence that exceeds the terms of the recommendation without first giving the defendant the right to withdraw his plea."

Rule 12(c)(2) contemplates that the judge will not exceed an agreed upon sentence recommendation without giving the defendant the right to withdraw his plea. Here, the defendant was informed by the judge directly, prior to the formal plea colloquy, that she was not going to follow the recommendation but rather, in all likelihood, would exceed it. The defendant understood that he assumed a substantial risk that he would not receive the recommended sentence. Any agreed

---

[5]The defendant also argues on appeal that the judge, in her findings on the defendant's new trial motion, did not discuss defense counsel's failure to warn the defendant, prior to appealing his bench trial conviction, as to the potential inadmissibility of this "crucial" evidence. There is nothing in the record below to indicate that the defendant was not so informed or that the information would have affected his decision to proceed with the trial de novo.

upon sentence recommendation which may have served as an inducement for the plea was rendered a nullity by the judge's unequivocal rejection of it prior to the tender of the plea.[6]

Even if there were here a technical violation of rule 12(c)(2), as this court stated in *Commonwealth* v. *Johnson*, 11 Mass. App. Ct. 835, 841 (1981), where the judge deviates from the technical mandate of rule 12(c), "[t]he real issue . . . is whether a waiver was knowingly and voluntarily made. . . . Thus, while compliance with the procedures set out in rule 12(c) is mandatory, adherence to or departure from them is but one factor to be considered" in determining the validity of a guilty plea. See also Reporter's Notes to Mass.R.Crim.P. 12(c), Mass. Ann. Laws, Rules of Criminal Procedure, at 204-209 (Law. Coop. 1979); *Commonwealth* v. *Barry*, 19 Mass. App. Ct. 995, 996 (1985). The procedure announced by rule 12(c) "is calculated to give reasonable assurance that a defendant is acting without coercion and with an understanding of what he or she is doing in tendering a plea." *Commonwealth* v. *Nolan*, 19 Mass. App. Ct. 491, 495 (1985).[7] See *Commonwealth* v. *Taylor*, 370 Mass. 141, 145-146 (1976).

The record shows that the defendant entered his plea freely and knowingly. Both before and during the plea collo-

---

[6]The record does not establish that the sentence recommendations were "contingent upon the tender of the plea," which would invoke application of Mass.R.Crim.P. 12(c)(2). However, we will make that assumption in the defendant's favor. The transcript also reveals that no notice was given to the judge of any "agreement made contingent upon the defendant's plea" as required by Mass.R.Crim.P. 12(b)(2), 378 Mass. 867 (1979). Indeed, the defendant concedes that the judge specifically refused to accept a plea tendered pursuant to rule 12(c)(2).

[7]The former rule 12(c)(2) gave the judge "broad discretion to allow a defendant to withdraw his plea before the plea has been accepted and sentence imposed." *Commonwealth* v. *DeMarco*, 387 Mass. 481, 484 (1982). Under the amended rule, the defendant is entitled to withdraw his plea as a matter of right, upon learning that the joint sentence recommendation has been rejected by the judge. Here, in effect, the judge rejected the recommendation and then gave the defendant the opportunity to withdraw the tendered plea before accepting it. The defendant was thus accorded the right given him by the rule in a manner that would enable the jury trial to proceed if the defendant had elected to withdraw the tender of the plea.

quy, the judge was clear that she "would not accept" and was "highly likely to exceed" the one-year sentence recommendation. See note 2, *supra.* The judge told the defendant that she could impose the maximum sentence of two and one-half years to be served consecutively on each charge. She also informed him that because the jury trial was under way, once he pleaded and the jury and witnesses were dismissed, he could not then withdraw his plea. The judge afforded the defendant ample opportunity to abort the plea process before his plea was accepted. Under these circumstances, where the purpose of rule 12(c)(2) was substantially met, the deviation from the rule, if any, "did not significantly affect the substance of the particular requirement, [and, therefore,] the postconviction (or 'collateral') attack . . . fails." *Commonwealth* v. *Nolan*, 19 Mass. App. Ct. at 496.

The defendant may not collaterally attack his guilty plea on the ground that his attorney misadvised him on the sentence he would receive, "particularly where the judge has advised the defendant that [s]he is not bound by the prosecutor's recommendation, has advised the defendant of the maximum possible sentence, and has made an express finding that the plea has been offered knowingly and voluntarily." *Commonwealth* v. *Stanton*, 2 Mass. App. Ct. 614, 622 (1974). See also *Commonwealth* v. *Perry*, 389 Mass. 464, 472 (1983). Accordingly, the denial of the motion for a new trial did not constitute an abuse of discretion.[8]

3. *Motion to recuse.* The defendant claims that the trial judge was unfair to and biased against him and should have recused herself from presiding over the postconviction proceedings. He suggests that the judge's improper conduct included the following: (1) misleading defense counsel to believe that the judge would accept a negotiated agreement

---

[8]Because we find no ineffectiveness with regard to the defendant's plea, his contention that trial counsel was ineffective because he did not obtain a pretrial ruling on the admissibility of certain accident reconstruction evidence fails. Once a voluntary plea was accepted, no ruling was required on the issue. Nevertheless, the record supports the judge's finding that the decision not to press a ruling on the issue at that time was a strategic choice by trial counsel which did not amount to ineffective assistance.

reached between trial counsel and the prosecution, and consented to by the victims' family; (2) imposing a sentence of imprisonment which was five times longer than the one recommended by the Commonwealth; (3) urging defense counsel to substitute his initial motion for a new trial on the ground of ineffective assistance of counsel with one alleging generally that the interests of justice had not been served, and then denying the motion she had induced counsel to make; (4) surrendering her sentencing discretion to the victims' family; and (5) criticizing trial counsel's affidavit submitted on the motion to revoke and revise the sentence. Reviewing these assertions individually and collectively, we see no unfairness or bias and no reason for the judge to have recused herself.

The decision to withdraw from a case at any stage is within the judge's sound discretion. *Commonwealth v. Coyne*, 372 Mass. 599, 602 (1977). *Harris v. Trustees of State Colleges*, 405 Mass. 515, 527 (1989). To require disqualification of the judge, the alleged bias or partiality ordinarily "must spring from an extrajudicial source, and not from matters learned from participation in the case." *Fogarty v. Commonwealth*, 406 Mass. at 111.

Regarding the possibility of the judge accepting a negotiated agreement, the judge stated to defense counsel, "I think your issue is with [the prosecutor], and if you can work something out, then I'll certainly hear it, but that's who you have to convince, not me." There was nothing misleading about the statement, nor was there a promise that the judge would accept an agreed upon recommendation. The judge merely indicated that any agreed upon sentence recommendation—regardless of whether the judge would accept it—would first have to be reached between the prosecutor and defense counsel. In the circumstances, the judge was not bound by the joint sentence recommendation of the prosecutor and the defendant. See Mass.R.Crim.P. 12(b)(1)(B), 378 Mass. 867 (1979).

Similarly, there is no support for the defendant's contention that the judge promised to reduce the defendant's sen-

tence if he filed an alternative motion for a new trial. Although the judge may have been inclined at the time of the lobby conference to impose a reduced sentence, she was entitled to consider the opinion of the victims' family as it related to sentencing. See G. L. c. 258B, § 3, and G. L. c. 279, § 4B (granting family members of homicide victims the right to inform the court of the impact of the crime and to recommend a sentence). The judge's decision to consider the views of the victims' family before altering the original sentence fully comports with the statute.[9]

Finally, the judge's comment that the affidavit submitted by trial counsel (which the defendant alleges was integral to his claim of ineffective assistance), "grossly misrepresents the record in this case" did not require recusal based on alleged partiality. When "[a]n opinion develop[s] from information acquired in the course of presiding over a case," a judge is not disqualified from rendering a decision in the matter. *Adoption of Seth*, 29 Mass. App. Ct. 343, 351 (1990). The judge could make use of her knowledge of what occurred at trial in assessing the credibility of the affidavit. *Commonwealth* v. *Bowie*, 25 Mass. App. Ct. 70, 84 (1987).

The defendant has failed to show any grounds for requiring the recusal of the judge.

> *Judgment affirmed.*
> *Order denying motion for recusal affirmed.*
> *Order denying motion for new trial affirmed.*

---

[9]The defendant's supplemental motion to recuse, which recounts the events of the lobby conference and hearing on the motion, reveals that after the victims' family was contacted for the second time, the decedent's two sisters and husband opposed a sentence reduction.