Toomey, J.
INTRODUCTION
Indictments were returned on September 16, 1986, accusing defendant of a series of sex offenses against the daughters and niece of his then girlfriend. At the time of the offenses — which included ten instances of rape of child (natural and unnatural), five episodes of indecent assault and batteiy on a child and one occasion of assault with intent to rape a child — the victims were, respectively, about seven and one half years of age (Samantha), eleven years of age (Julie) and twelve years of age (Shannon).
On April 2, 1987, defendant offered pleas of guilty and, after a colloquy to be addressed in more detail, infra, the pleas were accepted by the Superior Court, W. O’Neil, J. Sentencing was postponed until April 7, 1987, at which time a joint recommendation was presented to Judge O’Neil. He accepted the joint rec *133 ommendation and sentenced defendant to eleven State Prison terms of not less than ten and not more than twenty years (the rapes and the assault) and to five State Prison terms of not less than nine and not more than ten years (the indecent assaults and batteries). All sentences were ordered to be served concurrently with each other and with any sentences then being served.[1]
On or about November 15, 1996, defendant offered the instant motion for new trial by which he sought to withdraw his pleas of guilty. The plea judge having passed away and another judge, to whom the motion had been assigned, having retired, the matter was referred to the undersigned. On February 23, 1999, the motion was heard. No testimony was offered, counsel relying instead on the contemporaneous record of the plea and sentence proceedings. Counsel also offered various submissions including defendant’s affidavit, to which a number of exhibits were appended, and affidavits from plea counsel, from two former residents of the Bridgewater State Hospital and from the 1987 assistant medical director of the Bridgewater State Hospital. Additionally, defendant’s memorandum and affidavit in connection with his 1994 request for pre-trial confinement credit against his Worcester sentence[2] and excerpts from the 1998 Physicians Desk Reference (describing some of the common effects of Sinequam and Norpramin) were received by the court.
Defendant’s effort to withdraw his pleas of guilty and obtain a trial is comprised of three thrusts. First, he argues that his pleas were not intelligently and voluntarily offered because he had not been apprised, either by Judge O’Neil or by his plea counsel, that, as a sex offender, he would not be eligible to receive good time credits under G.L.c. 127, §129. Second, he contends that his pleas were not voluntary because, at the time he offered them, he was incompetent by reason of mental illness and overmedication. Finally, he maintains that his pleas were not voluntarily offered due to the ineffective counsel he received from his attorney who had cautioned him to conceal from the judge the extent of his medication and who had not fully informed Judge O’Neil of defendant’s mental illness. The sum of those circumstances, defendant concludes, so infected his pleas that the convictions based on them ought now to be vacated.
Counsel were afforded an opportunity to file final memoranda and, on March 12, 1999, the matter was taken under advisement by this court. Findings and rulings are presented infra.
FINDINGS OF FACT
1.On October 27, 1986, defendant was arraigned upon the instant indictments and Attorney John Roe-mer, a staff attorney for the Committee for Public Counsel Services was appointed to represent defendant.
2. On November 24, 1986, a pre-trial conference report was presented to Travers, J.
3. On March 12, 1987, defendant was ordered by the Concord District Court to be transported from MCI, Concord, where he was serving his Hampshire County sentences, to MCI, Bridgewater, for evaluation under G.L.c. 123, §18(a). The evaluation was in aid of the District Court’s determination with respect to his fitness for continued service of his Hampshire sentence.
4. On March 31, 1987, defendant was delivered, via habeas corpus writ, to Worcester Superior Court for a hearing. It is unclear what, if anything, occurred during his visit to Worcester, but the Bridgewater record indicates that his Worcester cases were continued to April 2, 1987, for “disposition,” a term commonly forecasting a guilty plea.
5. On April 2, 1987 defendant appeared in the Worcester Superior Court represented by Attorney (now Judge) Paul Waickowski, then the Supervisor of the Worcester Office of the Committee for Public Counsel Services.[3] The plea proceedings included a colloquy in which the following occurred:
a) defendant supplied his name, age and educational background:
b) defendant revealed that he had been treated for a “mental problem” at Bridgewater State Hospital to which he had been sent “because of your indictment for these different offenses”;
c) defendant denied any other treatment for a “mental problem,” and admitted that his “mind [was] clear here today” and “wasn’t affected by any medication or drugs or anything else”;
d) defendant expressed his understanding of his rights to trial, cross-examination, conviction only upon proof beyond reasonable doubt, appeals and his understanding of his privilege against self-incrimination;
e) defendant admitted to the elemental facts comprising each of the sixteen offenses charged by the indictments;
f) defendant conceded, during his admission to the facts of the offenses, that he had spoken “at length” with his attorney concerning the elements of the offenses, that the attorney “answered any questions that you had,” that the attorney had told him that the decision to plead guilty was “your decision alone” and that he had “given some thought to it”;
g) defendant acknowledged that he had not been threatened or promised anything in return for his guilty pleas, that his pleas were voluntary and offered because he was guilty, and that he was not confused by anything said by the judge, defense counsel or the prosecutor;
h) defendant disclaimed any complaints with respect to the services provided by his attorney and *134 agreed that the attorney had “done everything he could possibly do” under the circumstances; and
i) defendant also acknowledged that he understood that his pleas could expose him to “confinement [as a sexually dangerous person] from one day to life.”
Judge O’Neil found the pleas to be voluntary and offered with a full knowledge of their consequences. The pleas were accepted by the court, but sentencing was postponed until April 7, 1987.[4]
6. On April 7, 1987, defendant was sentenced by O’Neil, J. to concurrent State Prison terms of not less than ten nor more than twenty years on eleven indictments and not less than nine nor more than ten years on five indictments. All sentences were concurrent with the ten to twenty year Hampshire County sentences defendant was then serving. Defendant was apprised immediately of his right to appellate review of the sentences.
7. On April 9, 1987, the Bridgewater State Hospital completed its G.L.c. 123, § 18(a) evaluation and reported to the Concord District Court that defendant was mentally ill and that his psychiatric treatment ought to be rendered in a maximum security facility. The report observed that defendant suffered from “Major Depression, recurrent, Alcohol Abuse and Cocaine Abuse.” He was afflicted with a “Dysthmic Disorder” (an excessive reaction of depression due to an identifiable event) and was considered a serious risk of suicide. Accordingly, the report concluded that defendant ought to serve his Hampshire sentence in other than a penal setting and recommended his commitment to the Bridgewater State Hospital. There was no suggestion in the report that defendant was incompetent to be tried or offer pleas of guilty.
8. On April 22, 1987, the Brockton District Court committed defendant to the Bridgewater State Hospital for six months of treatment under the provisions of G.L.c. 123, §18(a). There is no evidence, on this record, reflecting when defendant was returned to a penal setting.
9. On April 23, 1987, defendant was delivered to Middlesex Superior Court where his pleas of guilty were accepted and he was sentenced to State Prison terms of not less than nine nor more than twenty years, concurrent with his Hampshire and Worcester sentences.
DISCUSSION
We begin from the proposition that one who delays unreasonably in bringing to the court’s attention allegedly fatal defects in the proceedings which resulted in his confinement is poorly positioned to assert those defects in his attempt to undo that which has been done. Commonwealth v. Lopez, 426 Mass. 657, 663 (1998). The analytical bias against the procrastinating defendant is especially pronounced when the delay is of such a duration that, if defendant’s motion is allowed, the Commonwealth’s opportunity to pursue an appropriate prosecution will be significantly prejudiced by tibe passage of time. Commonwealth v. Fanelli, 412 Mass. 497, 504 (1992). See also Commonwealth v. Demarco, 387 Mass. 481, 485 (1982). We must also recall that Mass.R.Crim.P. 30(b), under which the present motion is cast, permits a guiliy plea to be vacated only if “justice may not have been done,” a standard to be applied “rigorously.” Commonwealth v. Fanelli, 412 Mass. 497, 504 (1992). The burden of proof, at least with respect to matters outside the contemporaneous record, is upon the defendant. See cases collected at K. Smith, Criminal Practice and Procedure, 30A Mass. Prac. §2068, n.1.
At bar, defendant’s dilatoriness in seeking relief is clearly demonstrated. Even if, in an exercise of generosity to which defendant may not be truly entitled, we excise from the total period between his sentencing (April 7, 1987) and his filing of the instant motion (November 15, 1996), the six month period of his commitment to the Bridgewater State Hospital (April 2, 1987 to, presumably, October 2, 1987), there remain more than nine years of defense delay. Furthermore, shortly after the present plea, defendant appeared in Middlesex Superior Court to offer similar pleas in an effort to consolidate his sentences. And, on August 1, 1994, he submitted a pro se, yet well-drafted, motion, affidavit and memorandum seeking pre-trial confinement credits for the express purpose of achieving consolidation. His omission, on those occasions, to register his concerns with respect to his competency to plead guilty in 1987 erodes the credibility of his present assertions.
In that context, we proceed to an assessment of the three reasons defendant now advances in support of his attack upon the viability of his pleas of guilty.
I. The Omission to Inform Defendant of His Ineligibility for Credits
Defendant decries the absence, at the time of his plea, of an advisement to him that, as a sex-offender, he would not be eligible for reduction of his sentence by reason of “good-conduct” credits. G.L.c. 127, §129. Such an absence is, however, in the circumstances, no reason to illegitimize his plea.
Commonwealth v. Santiago, 394 Mass. 25, 30 (1985), teaches that failure to inform an accused of the “contingent consequences of being confined,” such as the ineligibilities established throughout G.L.c. 127, §§129-151, is not fatal to his plea. See also Commonwealth v. Indelicato, 40 Mass.App.Ct. 944, 945 (1996); Commonwealth v. Brown, 6 Mass.App.Ct. 844 (1978); K. Smith, Criminal Practice and Procedure, 30 Mass. Prac. §1241, n.2. Any misapprehension by defendant as to the potential duration of his confinement was surely remedied by the court’s allusion to (and defendant’s acknowledgment of) his exposure to a commitment (as a sexually dangerous person) of “the period from one day to life.”
*135 This court recognizes that an advisement to defendant, at least by counsel, of the secondary consequences of sentences is to be encouraged. A fully informed pleader is a legitimate objective in the interests of both fairness and the diminution of opportunistic Rule 30 challenges. Nevertheless, on the facts at bar, where defendant’s delay in asserting his supposed ignorance of his ineligibility for “good time” credits is unexcused and suggests the insincerity of his present claim, where the prejudice to the Commonwealth by reason of that delay is not inconsequential and where the colloquy did apprise defendant that his plea might lead to lifetime confinement, this court is not persuaded that defendant’s pleas were offered and received in circumstances where, as contemplated by Mass.R.Crim.P. 30, “justice may not have been done.”
II. The Assertion of Incompetence, by Reason of Mental Illness to Offer Pleas of Guilty
Defendant contends that his personal circumstances at the time he offered the pleas precluded him from entering pleas consistent with the due process guaranties of the Federal and Commonwealth Constitutions. His contention proceeds from the assumption that he was incompetent, by reason of mental illness and overmedication, when the pleas were offered and accepted. Were that assumption valid, defendant’s claim might possess some merit. There is, however, nothing in the submissions upon the instant motion that credibly supports the notion that defendant’s mental condition reached the benchmark of incompetence or otherwise shadows the viability ofhis pleas.
It is, of course, uncontroverted that defendant was in residence at the Bridgewater State Hospital at the time of the pleas. He had been transported there largely because his custodians were concerned that he posed a risk of suicide should he continue service, in a penal setting, of the Hampshire County sentence upon which he had recently embarked. Two days after his Worcester sentencing, the Bridgewater examiners concluded that defendant’s mental condition consisted of depression, the effects of substance abuse, and an excessive reaction to his circumstances. His potential for suicide was rated “serious” and two weeks later he was committed for six months to the Bridgewater State Hospital. Those circumstances notwithstanding, defendant has not established his incompetence to plead guilty.
It is axiomatic that one who is mentally ill is not thereby necessarily rendered incompetent to enter pleas to criminal accusations. See, e.g., Commonwealth v. Blackstone, 19 Mass.App.Ct. 209 (1985). Any suggestion that, solely because of his mental illness, defendant was incompetent is not grounded in law. There must be more than the fact of mental illness in order to ratchet defendant’s condition to the level of incompetence. That is to say, there must be a demonstration that defendant lacked the ability to consult, rationally and with understanding, with his lawyer and had insufficient rational, factual comprehension of the proceedings. Commonwealth v. Russin, 420 Mass. 309, 316-17 (1995). No such demonstration has been made at bar.
The Bridgewater documents reflect the examiners’ opinions, reached at about the time of the pleas, that defendant had “no gross thought disorders . . . the judgment appears adequate ... no ongoing psychotic process ... no gross loosening of associations or flight of ideas . . .” Furthermore, the fact that, shortly after the pleas at bar, defendant entered pleas to similar Middlesex accusations evidences defendant’s then competence to plead. We know that the experienced trial judge who received the pleas observed no indicia of incompetence because, despite his awareness of defendant’s lay-over at the Bridgewater State Hospital, he was not prompted to inquire more deeply into the defendant’s competence. Judge O’Neil’s omission to note anything untoward with respect to defendant’s competence is concededly not determinative, but his satisfaction, in the face ofhis knowledge of defendant’s mental health history, that defendant was competent to offer his pleas is surely entitled to some weight in this after-the-fact Rule 30 inquiry.
Defendant also suggests that his overmedicaüon just before he presented his pleas rendered him incompetent. He points to the affidavits of two current residents of MCI Gardner as corroboration ofhis claim that double dosages were de rigueur for Bridgewater residents who were to be transported to other locations and might require a sedating agent. The credibility of those affidavits — and defendant’s assertions on the point — is, however, highly suspect. The affidavit of Doctor Veliz contradicts the allegation of an over-medication policy in 1987 for Bridgewater residents who were to attend court proceedings. The records of Bridgewater State Hospital recite that defendant had been weaned from one of his medications eleven days prior to the court appearance now under scrutiny and had received but a single dosage of the other. In sum, the defendant’s assertion of overmedication and the support provided by the corroborating affidavits are not sufficient to persuade this court that defendant was rendered incompetent to plead by reason of multiple doses of prescribed medication.[5]
In view of the inadequacy of the instant evidentiary materials to supply a compelling reason to discredit defendant’s plea colloquy concessions to the effect that he understood the accusations, his rights and the consequences ofhis pleas and that he was not befuddled by medication, there is no merit to his present contention that he was incompetent to plead guilty. Accordingly, his effort to paint his plea as tainted by mental illness and mis-medication will fail.
III. The Claim of Ineffectiveness of Plea Counsel
Defendant submits that his plea counsel’s omission to "alert the court to the fact of defendant’s treatment for mental illness” obscured “defendant’s incompe *136 tence and the serious relationship between the plea and the illness.” He also faults his counsel’s “instructions to him prior to the plea”; those “instructions” allegedly directed defendant to avoid reference to medications consumed by defendant and to answer the court’s questions in a manner calculated to prompt acceptance of the pleas.[6]
The infirmity in defendant’s contention is that there is no convincing proof that counsel “failed to alert the court” or advised defendant purposefully to mislead the court. The court was, by reason of the colloquy it had engaged, aware of defendant’s residence at the Bridgewater State Hospital, but chose not to inquire further. In view of the absence of any suggestion in the record or otherwise that defendant’s competence was suspect, Judge O’Neil was well within his discretion in not probing more deeply.[7] And, there is no evidence at bar that plea counsel himself had any reason to be concerned with respect to defendant’s competence.
Similarly, this court has received no evidence, other than defendant’s self-serving and belated affidavit, suggesting that plea counsel advised defendant to tune his contributions to the plea colloquy in order to compose responses that would insure acceptance of the pleas. In fact, the court views defendant’s affidavit as nothing more than a recent contrivance, calculated to subvert the plea, and, accordingly, ascribes no probative value to it. On the other hand, the affidavit of plea counsel to the effect that he would not advise any client to mislead the court is wholly credible.[8] The sum of the evidence on this point is well beneath that which would brand the representation received by defendant as ineffective under the controlling standard. See Commonwealth v. Saferian, 366 Mass. 89, 96 (1974); Commonwealth v. Clerico, 35 Mass.App.Ct. 407, 411 (1993) (applying Saferian to challenges to guilty pleas).
CONCLUSION
Whatever ailments may have bedeviled defendant at the time he offered his pleas, it is plain, on this record, that none rendered him incompetent to engage in the probability calculations and risk assessment analyses that characterize the decision to forego trial and offer a plea of guilty. In fact, this record depicts defendant as calculating and goal-oriented. His admitted obj ective was to manipulate the three prosecutions that confronted him and obtain concurrent sentences. To accomplish concurrency, or at least to diminish the likelihood of consecutive sentences, he engaged in plea bargaining and, in the Worcester matter, he succeeded in accomplishing his goal because the Commonwealth joined him in recommending sentences concurrent with the Hampshire terms of confinement.[9] Such purposeful conduct in pursuit of his avowed goal of “actual consolidation” by means of Worcester and Middlesex guilty pleas fatally undercuts defendant’s current effort to depict himself as disoriented, submissive and ignorant at the time of the Worcester pleas. The claim of incompetence has not been made out.
At bottom, this motion seeks to undo the very result that defendant purposefully sought. His attack upon plea counsel's effectiveness is particularly vexatious in view of counsel’s ethical pursuit of defendant’s own chosen strategy. There is, on this record, no occasion to conclude that “justice may not have been done,” Mass. R. Crim. P. 30(b), and the motion will be DENIED.

 Defendant was then serving concurrent ten to twenty year sentences to State Prison imposed, on February 27, 1987, after trial in Hampshire County involving similar indictments and some of the same victims as were addressed in the instant indictments. Subsequently, on April 23, 1987, defendant was sentenced, upon his guilty pleas to similar Middlesex County indictments, to a number of concurrent nine to twenty year State Prison terms, concurrent with his Hampshire and Worcester sentences. As stated in defendant’s August 1, 1994 motion in this court seeking pre-trial confinement credits, his Worcester and Middlesex “guilty pleas were intended to achieve” a particular result, to wit “the actual consolidation of those sentences [imposed for his numerous sex offenses].”

 Defendant’s request was granted, on September 9, 1994, by Travers, J., thus shaving 292 days from the Worcester sentence.

 This record contains no information as to why Attorney Waickowski appeared vice Attorney Roemer at the plea proceedings. Nevertheless, in this court’s experience, such a substitution of counsel by CPCS attorneys is not uncommon, especially in view of the joint nature of the recommendation to be presented to Judge O’Neil. In any event, defendant does not now complain of the substitution.

 Attorney Waickowski did inform Judge O’Neil that the joint recommendation to be offered on April 7 would seek “to run the ten to twenty concurrent” with the Hampshire County ten to twenty year sentence then being served.

 With respect to the corroborative affidavits, their credibility is further eroded by what appears to be common authorship. It is curious indeed that each affidavit contains a number of words misspelled in the same manner, the uniform substitution of “I” for “1,” and the employment of nearly identical sentence construction.

 Also criticized was counsel’s instruction "to take the deal offered or face life in prison after trial.” We need not pause at that criticism because such a “direction” was wholly accurate. To have suggested that less than “life” awaited defendant after conviction would indeed have constituted, in the circumstances, ineffective lawyering.

 Indeed, had Judge O’Neil the benefit of the psychiatric evaluations of defendant now available to us, he would have learned nothing that would have compelled a competency inquiry.

 Defendant’s view of plea counsel’s affidavit as inadmissible “habit” evidence misses the mark. The affidavit alludes to plea counsel’s “knowledge” as to what he would and would not do in certain circumstances and does not aver what he did or did not do in like circumstances.

 Although the record at bar does not reflect whether or not defendant succeeded in persuading the Middlesex prosecutor also to make a joint recommendation, we do know that defendant did convince the Middlesex judge to run his sentences concurrent with the Hampshire and Worcester terms.