In the Matter of Walter.

Suffolk. September 7, 1990. - November 15, 1990.

Present: LIACOS, C.J., NOLAN, LYNCH, O'CONNOR, & GREANEY, JJ.

*Paternity. Legitimacy. Probate Court*, Jurisdiction, Paternity proceeding. *Jurisdiction*, Paternity proceeding, Probate court. *Practice, Civil*, Standing.

In an adoption case in which the child in question was born while the mother was married, the adoption agency was not entitled to maintain an action to determine the child's paternity under G. L. c. 209C, where that statute is only applicable to "child[ren] born out of wedlock" [587-589]; and, in the circumstances, it was not in the best interest of the child for the guardian ad litem to proceed with a similar paternity action in behalf of the child [589].

PETITION filed in the Suffolk Division of the Probate and Family Court Department on March 31, 1989.

CIVIL ACTIONS commenced in the Suffolk Division of the Probate and Family Court Department on June 30, 1989, and January 18, 1990, respectively.

The proceedings were heard by *Mary B. Muse*, J., and questions of law were reported by her to the Appeals Court. The Supreme Judicial Court transferred the case on its own initiative.

*Leo J. Lydon* for the minor.

*Jeremy A. Stahlin* for Boston Children's Service Association.

*Mark D. Stern & Wendy Kaplan* for the husband.

LYNCH, J. This appeal involves the question whether a child or an adoption agency may bring an action to disprove the paternity of the child's mother's husband. That question arises from three actions filed in the Probate Court: a petition to dispense with the husband's consent to adoption,

G. L. c. 210, § 3 (1988 ed.); and two actions to establish paternity under G. L. c. 209C (1988 ed.). The Boston Children's Service Association (agency), a private agency licensed under G. L. c. 28A (1988 ed.), filed the petition to dispense with consent and one of the paternity actions. The other paternity action was brought in behalf of the child by a guardian ad litem. The facts found by the probate judge and the intertwined procedural history of the case are as follows:

The mother gave birth to a son at a time when she was married to the husband, with whom she had been living during the time of conception, pregnancy, and birth. The mother named the husband as the father on the child's birth certificate. However, the husband did not know the mother was pregnant or had given birth. The husband and mother separated thereafter, and a complaint for divorce was filed.

The day after the child's birth the mother placed the child in the care of the agency. Subsequently, she executed an adoption surrender, relinquishing her parental rights to her son. The child was placed in a foster home with the goal of adoption by the foster parents.

The agency then filed a petition in the Probate Court to dispense with the husband's consent to adoption. The first time the husband learned of the child's existence was when he was served with a citation in relation to this petition. At that time, he asserted his paternity and his desire for custody of the child, and he began regular visitation toward that end. He is willing and able to support the child.

The mother told the agency that the husband was not the child's father, and claimed that she had not had intercourse with her husband for at least eighteen months prior to the child's birth. She named John Doe as the father of the child. The husband claimed he had been living with the wife continuously for six years and was having sexual relations with her until they separated about six months after the birth of the child.

In connection with its paternity action the agency moved to compel the husband to submit to blood and genetic marker

testing under G. L. c. 209C, § 17. John Doe and the mother had voluntarily consented to such testing.

The judge denied the motion, ruling that the best interests of the child would not be served by having him declared a child of two unwed people, neither of whom desires custody.[1] The judge then dismissed the agency's paternity action, holding the agency is not authorized under G. L. c. 209C to attack the husband's presumed paternity. The agency appealed.

In connection with his separate paternity action the child moved to compel the husband to submit to blood and genetic marker testing. The judge ruled that a child may not maintain a paternity action under G. L. c. 209C, where the sole · goal is to determine paternity; she denied the motion, and dismissed the action. The judge reserved and reported the issues arising from her dismissal of the child's action.[2]

All of the foregoing matters were consolidated by a single justice of the Appeals Court. We transferred the case here

---

[1] The judge also ruled that the husband — the legal father — is not a "putative father" for the purposes of G. L. c. 209C, § 17.

[2] The judge delineated these issues as follows:

"*ISSUE I*

"Does Massachusetts General Laws, Chapter 209 (c) allow the child to bring a complaint to establish paternity?

"*ISSUE II*

"Is it in the best interests of the child to know the facts of his paternity, and if so, does this right outweigh the State's public policy not to bastardize a child?

"*ISSUE III*

"Does the husband of a woman to whom a child was born during coverture have the right to seek the care and custody of said child when neither the mother nor the alleged putative father is interested in parenting the child?

"*ISSUE IV*

"Did the recent ruling of the Supreme Judicial Court in *C.C* v. *A.B.* (1990) eliminate all vestiges of legal standing by the husband when the putative father does not wish to exercise the rights given to him under the aforesaid case?

"*ISSUE V*

"John Doe has had no contact with the child and would not be able to make a preliminary showing of a substantial parent/child relationship. If John Doe cannot produce the evidence of his paternity, who can? Should

sua sponte and we now affirm.

At the outset we must decide whether G. L. c. 209C applies in this situation. Section 1 of G. L. c. 209C provides:

> "Children born to parents who are not married to each other shall be entitled to the same rights and protections of the law as all other children. It is the purpose of this chapter to establish a means for *such* children . . . to have an adjudication of their paternity, to have an order for their support and to have a declaration relative to their custody or visitation rights . . . For the purpose of this chapter, the term 'child born out of wedlock' shall refer to any child born to a man and woman who are not married to each other" (emphasis added).

The purpose of the statute is to provide a means to establish paternity for children born out of wedlock. *C.C.* v. *A.B.*, 406 Mass. 679, 681 (1990). The applicability of the statute therefore turns on whether the child was "born out of wedlock." We conclude he was not. The statute specifically provides that, in the circumstances of this case, the husband is the presumptive father of the child in question. G. L. c. 209C, § 6 (*a*) (1) (6). Furthermore, the ordinary meaning of the term "born out of wedlock" suggests that it does not apply where the mother's husband, who is named as the father on the birth certificate, acknowledges and asserts his parenthood. That the common law presumption of legitimacy may now be rebutted, in some circumstances, by clear and convincing evidence, *C.C.* v. *A.B.*, *supra* at 687, the same standard for rebuttal of the statutory presumption, does not suggest that the statutory concept "born out of wedlock" applies in these circumstances.

---

[the husband] have to submit to blood testing to produce such evidence, which could be used to defeat his goal?

"*ISSUE VI*

"Should the instant complaint be dismissed in light of the principle stated in *C.C.* v. *A.B.* that 'we continue to adhere to the common law principle that motivated the presumption of legitimacy . . . that there is a strong interest in not bastardizing children?' "

Not only does the statute create a presumption that the husband is the child's father, but it precludes a challenge to that presumption being raised by a man in the same circumstances as the person alleged to be the father in this case. *C.C.* v. *A.B.*, *supra* at 682. It is inconceivable that the Legislature intended that a putative father could not bring a paternity action in these circumstances, but that an agency concerned only with facilitating adoption could. Additionally, to permit the agency to contest paternity in these circumstances would be inconsistent with the requirement of our recent decisions that a man other than the husband must make a preliminary showing of a substantial parent-child relationship to contest paternity in a nonstatutory equity action. See *C.C.* v. *A.B.*, *supra* at 689 (existence of substantial parent-child relationship is controlling factor in determining whether a man other than husband may bring equity action under G. L. c. 215, § 6 [1988 ed.], to establish his paternity); *P.B.C.* v. *D.H.*, 396 Mass. 68 (1985), cert. denied, 475 U.S. 1058 (1986) (man other than husband has no common law right, in all circumstances, to be heard on question of paternity).

To permit the agency to advance this claim would not only be inconsistent with the statutory language and recent decisions of this court, but it is also contrary to the intent of G. L. c. 209C. Chapter 209C was enacted as part of comprehensive child support legislation, St. 1986, c. 310. Its express purpose was to establish a means for children born out of wedlock to have their paternity adjudicated and to obtain orders for support, custody, and visitation. G. L. c. 209C, § 1. It appears from this context, therefore, that the Legislature intended that paternity actions be used to give children born out of wedlock the same opportunity as other children to make support and related claims, rather than as a weapon to facilitate the adoption of a child against the wishes of a presumptive father willing and eager to support the child, with the effect of rendering the child the illegitimate offspring of parents who want no responsibility for him. The

child in this case suffers none of the disabilities of illegitimate children which G. L. c. 209C was designed to alleviate.

The probate judge ruled that by filing the paternity action the agency was acting contrary to its statutory purpose, as set forth in G. L. c. 28A, § 1 (5), "to assure that family foster care . . . is provided only when the family itself or the resources available to the family are unable to provide the necessary care and protection." This ruling adds additional support to the conclusion that the statute does not permit the filing of this paternity action by the agency.

Up until now we have limited our discussion to the propriety of the agency's action under G. L. c. 209C. We now turn to examine whether the right of the child to bring such an action stands on any different footing.

In deciding this issue we limit ourselves to the particular circumstances before us. The judge found that it was not in the best interest of the child to proceed with a determination of paternity in this case. When, as is the case here, a paternity action is being advanced by a representative of the minor child, the motivating factor for the guardian's conduct is the protection of the child's interest. *Superintendent of Belchertown State School* v. *Saikewicz*, 373 Mass. 728, 755 (1977). The guardian ad litem makes no compelling argument that it is in the child's best interest to proceed with this paternity action. The judge's finding, that an adjudication of paternity in favor of the parent not asserting the claim, with no apparent interest in the child and who was not married to the child's mother, is not in the best interest of the child where the presumptive father is willing and able to raise and support the child, is clearly warranted if not compelled. It is not necessary for us to decide, therefore, what other circumstances, if any, would justify the filing of an action to determine paternity under G. L. c. 209C brought by or on behalf of a child.

The dismissal of the agency's action to determine paternity is affirmed. Our answer to question No. 1 is that, in the cir-

cumstances of this case, a child may not bring an action to establish paternity under G. L. c. 209C.