## DEPARTMENT OF REVENUE *VS*. RYAN R.[1]

No. 03-P-943.

Barnstable. April 8, 2004. - November 2, 2004.

Present: BECK, DUFFLY, & MILLS, JJ.

*Paternity. Jurisdiction,* Paternity proceeding. *Probate Court,* Paternity proceeding, Attorney's fees. *Estoppel. Collateral Estoppel. Parent and Child,* Child support.

In an action by the plaintiff Department of Revenue (department) seeking to establish paternity of a child on behalf of the mother, an earlier stipulation of dismissal of the mother's pro se complaint, which had been brought under G. L. c. 215, § 6, did not operate to preclude the department's later action pursuant to G. L. c. 209C, § 5, where there was no adjudication on the merits in the earlier action [382-384]; moreover, the Probate Court had subject matter jurisdiction over the present action where, notwithstanding that the mother's husband had been listed as the father on the child's birth certificate, the mother had told her husband from the time she discovered she was pregnant that he was not the father, and he had not asserted his paternity, and therefore, the child was "born out of wedlock" within the meaning of G. L. c. 209C, § 5(*a*) [384-386].

There was no merit to the argument that the judge in an action to establish paternity, after having ordered the defendant to submit to genetic marker testing, acted other than impartially in deciding motions to dismiss, even assuming that the judge became aware of the test results prior to deciding the motions. [386]

This court declined to consider an appeal in an action to establish paternity from an order pursuant to G. L. c. 231, § 6F, requiring the putative father to pay the mother's husband's attorney's fees, where the putative father had not appealed to a single justice of this court as required by G. L. c. 231, § 6G. [386-387]

The record in an action to establish paternity supported the judge's finding as to the defendant's annual income, which finding formed the basis for the judge's award of child support. [387-389]

COMPLAINT to establish paternity filed in the Barnstable Division of the Probate and Family Court Department on November 3, 2000.

---

[1] A pseudonym. We also use pseudonyms for the mother and her husband.

The case was heard by *Robert A. Scandurra*, J.

*David Berman* for the defendant.

*Susan Paulson*, Assistant Attorney General, for the plaintiff.

DUFFLY, J. At the time she gave birth to a son, Susan S. was married to Sheldon S. Susan and Sheldon continued to live together until February, 2001, and subsequently were divorced by a judgment which acknowledged that Sheldon is not the child's father. Thereafter, the Department of Revenue child support enforcement division (department), on behalf of Susan, filed a complaint against Ryan R. to establish paternity.[2] G. L. c. 209C, § 5; G. L. c. 119A, § 3. Ryan appeals from a judgment adjudicating him the father and ordering that he pay child support in the amount of $285 per week retroactive to the date Susan filed for divorce from Sheldon, as well as Sheldon's attorney's fees, pursuant to G. L. c. 231, § 6F. Central to Ryan's various challenges on appeal are his claims that the complaint should have been dismissed because the Probate Court lacked subject matter jurisdiction or on principles of claim or issue preclusion. We disagree and will affirm.

1. *Summary of facts and proceedings.* When Susan commenced employment with Ryan in his dental laboratory during the summer of 1993, she and Sheldon were married. The following year, Susan and Ryan began a romantic relationship that continued for some time, during which they were sexually intimate. When Susan learned she was pregnant, in March, 1997, she told Ryan and expressed her belief that he was the father; she also told her husband that she was pregnant and that he was not the father.

Ryan accompanied Susan to Brockton Hospital for her pregnancy test and to her first ultrasound appointment, and went shopping with her for baby furniture, but they had no further communication after Susan left his employ in August, 1997. When the child was born, on October 24, 1997, Sheldon was listed as the father on the child's birth certificate. Because the child suffered from a number of ailments, including immune deficiencies, asthma, and an infectious illness (Kawasaki's disease), Susan did not resume full-time employment after his

---

[2]Sheldon was named a defendant as required by G. L. c. 209C, § 6.

birth. She and Sheldon experienced financial difficulties and filed for bankruptcy protection. Susan collected food stamps and welfare benefits for several months.

In February, 2001, Susan instituted divorce proceedings and Sheldon moved out of the marital home. The divorce judgment (which entered after a trial before the same judge who presided over the paternity proceedings) provides that "[t]he child born during the marriage . . . is not a child of the Husband's. However, as the Husband is the only 'father' that the child has known during his life, and as the Husband has cared throughout the marriage for the child and there is a bond that exists between the child and the Husband, . . . the Husband is the 'de facto' father of the child . . . ." The judgment provides for visitation and orders Sheldon to pay child support in the amount of $75 per week. Also according to the judgment, the child support amount was not consistent with the child support guidelines, which were deemed inapplicable for the stated reason that Sheldon is not the child's father and because "the Wife will receive additional child support from the child's biological father."

On September 19, 2000, Susan filed a pro se complaint, pursuant to G. L. c. 215, § 6, seeking to establish Ryan as the child's father. Ryan then filed a motion to dismiss the complaint on the basis that there exists an "exclusive statutory scheme under which parents, such as [Susan], may seek an adjudication of paternity," and that "as *mother* of the child . . . [she] . . . cannot commence an action to establish paternity under [G. L.] c. 215, § 6." On November 3, 2000, Susan, Sheldon, and Ryan entered into a written stipulation agreeing that the court should "dismiss [Susan's] 'Complaint to Establish Paternity Pursuant to G. L. c. 215, § 6,' dated 'September 2000' against [Ryan] *with prejudice*." On the same day, November 3, 2000, the department, on behalf of Susan, filed the complaint to establish paternity pursuant to G. L. c. 119A, § 3, and G. L. c. 209C, that is the subject of this appeal.[3]

2. *Discussion.* a. *Claim preclusion.* As an initial matter, we address Ryan's argument that the parties' stipulation of dismissal

---

[3]Ryan's counterclaims for custody and visitation were bifurcated from the issues of paternity and support. Ryan's motion seeking entry of a final judgment on fewer than all issues, Mass.R.Dom.Rel.P. 54(b) (1981), was allowed,

of Susan's pro se complaint, which had been brought under G. L. c. 215, § 6, operates to preclude the department's later action seeking to establish paternity on Susan's behalf pursuant to G. L. c. 209C. "The essential elements of claim preclusion are: '(1) a final judgment on the merits in [the first] action; (2) an identity of parties or privies in the two suits; and (3) an identity of the cause of action in both the earlier and later suits.' "[4] *Mancuso* v. *Kinchla*, 60 Mass. App. Ct. 558, 567 (2004), quoting from *Aunyx Corp.* v. *Canon U.S.A., Inc.*, 978 F.2d 3, 6 (1st Cir. 1992), cert. denied, 507 U.S. 973 (1993). Ryan's claim fails on the first prong, as there was no adjudication on the merits.

It may readily be inferred from the context in which the stipulation to dismiss was made that it was not a dismissal on the merits, but addressed solely whether Susan was required to file the action pursuant to G. L. c. 209C, rather than G. L. c. 215, § 6. See *Salem* v. *Massachusetts Commn. Against Discrimination*, 44 Mass. App. Ct. 627, 638-639 (1998), citing Restatement (Second) of Judgments § 26 comment c (1982) (where formal barriers, such as limitations on subject matter jurisdiction, existed in first action, plaintiff is not barred from bringing those claims in subsequent action); *id.* at § 26 comment d (same, even if it later appears that determination that such barrier existed was erroneous); *id.* at § 20 comment d (dismissal for lack of jurisdiction or other threshold determination, even with specification that dismissal is "with prejudice," will not bar another action by plaintiff on same claim).[5] See also Mass.

---

permitting his appeal from the judgment, as twice amended, addressing the claims raised by the department's complaint.

[4]It differs from issue preclusion, which "prevents relitigation of an issue determined in an earlier action where the same issue arises in a later action, based on a different claim, between the same parties or their privies." *Bourque* v. *Cape Southport Assocs., LLC*, 60 Mass. App. Ct. 271, 273 (2004), quoting from *Heacock* v. *Heacock*, 402 Mass. 21, 23 n.2 (1988). We note that, in this case, the issue of paternity is coextensive with the claim made; the distinction between issue and claim preclusion is not determinative. Under neither theory is the issue or claim of paternity precluded. "[A] stipulation of dismissal with prejudice is not the equivalent of a final judgment on the merits for the purposes of issue preclusion." *Jarosz* v. *Palmer*, 436 Mass. 526, 529 (2002).

[5]We therefore need not decide whether, by virtue of G. L. c. 209C, Susan was precluded from seeking to establish paternity under G. L. c. 215, § 6,

R.Civ.P. 41(b)(3), 365 Mass. 805 (1974).[6] Contrast *Department of Rev.* v. *LaFratta*, 408 Mass. 688, 692 (1990) (issue of paternity was deemed to have been fully litigated in prior action for criminal nonsupport under G. L. c. 273, where that action was settled and dismissed with prejudice upon defendant's lump sum payment of $3,000; this "was tantamount to an acquittal and thus barred future civil action brought by the department under [G. L.] c. 209C").

Even assuming without deciding that the department was acting solely on behalf of Susan in bringing the second complaint, the judge was correct in not dismissing the complaint.[7,8]

b. *Jurisdiction.* Ryan moved to dismiss the complaint on the basis that the Probate Court lacked subject matter jurisdiction because a parent of a child cannot file an action under G. L. c. 209C unless the subject child was "born out of wedlock," a requirement he argues was not met here because Susan was married when the child was born. Denial of the motion is supported by the plain language of G. L. c. 209C, § 1, as inserted by St. 1986, c. 310, § 16, which provides: "For the purpose of this chapter, the term 'child born out of wedlock' shall refer to any child born to a man and woman who are not married to

which confers general equity jurisdiction upon the Probate Court, or whether *Doe* v. *Roe*, 23 Mass. App. Ct. 590 (1987) applies to circumstances such as those present in this case. See *id.* at 595 ("We perceive nothing in [G. L. c. 209C] which limits [or was intended to limit] the scope of the preexisting general equity jurisdiction of the Probate Courts under G. L. c. 215, § 6").

[6]The rule provides that "any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction, for improper venue, or for failure to join a party under [r]ule 19, operates as an adjudication upon the merits." Mass.R.Civ.P. 41(b)(3), 365 Mass. 805 (1974).

[7]We reject as without merit Ryan's claim that the issue of paternity was determined in the divorce proceedings between Susan and Sheldon. The judgment in that case did not determine that Sheldon was the father, but specifically determined that he was not the father. The award of visitation and order requiring that Sheldon contribute to the child's support was not based on a finding of paternity but on the facts that Sheldon "cared throughout the marriage for the child and there is a bond that exists between the child and [Sheldon]." The propriety of this determination is not before us.

[8]We note that, because of its obligation to provide public assistance to indigent families, the Commonwealth may have an interest separate from that of the mother. The department is the "IV-D agency" authorized by G. L. c. 209C, § 5(*a*), and G. L. c. 119A, § 2(*a*), to bring actions to establish paternity.

each other . . . ." See also G. L. c. 209C, § 5(*a*), as amended through St. 1998, c. 463, § 173: complaints under c. 209C

> "may be commenced by the mother . . . or [the department] if the child is or was a recipient of any type of public assistance . . . provided, however, that if the mother of the child was or is married and the child's birth occurs during the marriage or within three hundred days of its termination by death, annulment or divorce, complaints to establish paternity under this chapter may not be filed by a person presumed to be or alleging himself to be the father unless he is or was the mother's husband at the time of the child's birth or conception."

Ryan's reliance on *Matter of Walter*, 408 Mass. 584 (1990), to support his argument is misplaced. The Supreme Judicial Court held in that case that a child born to the mother while married to her husband was not "born out of wedlock," because the husband asserted his paternity and sought custody of the child. Although the mother was living with the husband at the time, he was not aware that she had become pregnant or had given birth. They thereafter separated and a divorce complaint was filed. The husband first learned about the child's existence when notified by a private adoption agency that the mother had relinquished the child for adoption. When the agency petitioned to dispense with the husband's consent to the adoption, he asserted his paternity, claiming he lived with and was having sexual relations with the mother for six years prior to and until six months after the birth of the child. The mother denied this, and named another man as the father. The agency and the child both brought actions pursuant to G. L. c. 209C, seeking to establish paternity. *Id.* at 585. On these specific facts, the court held that "the ordinary meaning of the term 'born out of wedlock' suggests that it does not apply where the mother's husband, who is named as the father on the birth certificate, acknowledges and asserts his parenthood." *Id.* at 587.

This case presents an entirely different set of relevant facts: notwithstanding the fact that Sheldon was listed as the father on the child's birth certificate, Susan had told him from the time she discovered that she was pregnant that he was not the father; moreover, Sheldon did not assert his paternity. Where a child

who is the subject of a c. 209C action is claimed by the child's mother to have a biological father who is not her husband, and her husband is not asserting paternity, that child was "born out of wedlock" within the meaning of G. L. c. 209C. See *C.C.* v. *A.B.*, 406 Mass. 679, 688 (1990); G. L. c. 209C, § 5(*a*).

c. *Requirement of paternity testing.* Submission to genetic marker testing by "the mother, the child and the putative father" is mandated by G. L. c. 209C, § 17, as amended through St. 1998, c. 463, § 174, upon a proper showing.[9] After the c. 209C complaint was filed, the department sought and obtained an order requiring Ryan to participate in paternity testing, to which he submitted over objection.[10] He argues on appeal that "a rule of fundamental fairness requires that a court not be informed of" test results before deciding the threshold issues, including the question of jurisdiction. Ryan does not direct us to any relevant authority for this proposition. See Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975). In any case, Ryan did not seek to have the judge disqualified and he makes no claim that the judge improperly considered the evidence of paternity. Even assuming that the judge became aware of the test results prior to deciding the motions to dismiss, we presume that he fulfilled his obligation to impartially decide the motions.[11]

d. *Attorney's fees.* During the pendency of the proceedings, Sheldon filed a motion for attorney's fees pursuant to G. L. c. 231, § 6F,[12] arguing that he was required to defend "the

---

[9] "An affidavit by the mother or the putative father alleging that sexual intercourse between the mother and the putative father occurred during the probable period of conception shall be sufficient to establish a proper showing." G. L. c. 209C, § 17, as appearing in St. 1998, c. 64, § 234.

[10] The test results established the probability of Ryan's paternity of the child to be 99.998 per cent.

[11] In the context of a claim that a judge should have disqualified herself from presiding over a jury-waived trial where, through participation in prior proceedings, she learned facts or developed impressions about the issues before her, we have left the question whether to disqualify to the judge's discretion. See *Demoulas* v. *Demoulas Super Markets, Inc.*, 424 Mass. 501, 525 (1997). See also cases cited in *Commonwealth* v. *Coyne*, 372 Mass. 599, 602-603 (1977); *Commonwealth* v. *Clerico*, 35 Mass. App. Ct. 407, 415 (1993).

[12] General Laws c. 231, § 6F, as inserted by St. 1976, c. 233, § 1, provides in relevant part:

claim against him of 'unclean hands' and 'collusion.' " The motion was allowed by a margin notation that also indicates "see Amended Judgment." The amended judgment orders Ryan to pay Sheldon's counsel fees in the amount of $6,850, for the reason that Ryan's "claims were wholly unsubstantial, frivolous, and not advanced in good faith," as more fully explained in the judge's findings. In his brief, Ryan challenges the award of § 6F fees. An appeal from the award of fees pursuant to § 6F must be made to a single justice of this court. G. L. c. 231, § 6G.[13] Because there is nothing in Ryan's notice of appeal "specify[ing] that it is an appeal from the portion of the judgment awarding attorney's fees under § 6F, we shall treat it only as an appeal to a panel from those portions of the judgment that are within the panel's jurisdiction." *Bailey* v. *Shriberg*, 31 Mass. App. Ct. 277, 284 (1991).[14]

e. *Award of child support.* After factoring in alimony and

---

"Upon motion of any party in any civil action in which a finding, verdict, decision, award, order or judgment has been made by a judge or justice or by a jury, auditor, master or other finder of fact, the court may determine, after a hearing, as a separate and distinct finding, that all or substantially all of the claims, defenses, setoffs or counterclaims, whether of a factual, legal or mixed nature, made by any party who was represented by counsel during most or all of the proceeding, were wholly insubstantial, frivolous and not advanced in good faith. The court shall include in such finding the specific facts and reasons on which the finding is based.

"If such a finding is made with respect to a party's claims, the court shall award to each party against whom such claims were asserted an amount representing the reasonable counsel fees and other costs and expenses incurred in defending against such claims."

[13]General Laws c.231, § 6G, as inserted by St. 1992, c. 133, § 561, provides in pertinent part: "Any party aggrieved by a decision on a motion pursuant to section six F may appeal as hereinafter provided. If the matter arises in the superior, land, housing or probate court, the appeal shall be to the single justice of the appeals court . . . ."

[14]Ryan's claim — that Sheldon could not be awarded fees under G. L. c. 231,§ 6F, because he was joined as a necessary party in the action by Susan and was not defending a formal claim against him by Ryan — would not likely have prevailed. Sheldon had an interest in assuring that Ryan was adjudicated the father, and claims directed against Sheldon by Ryan (apparently to the effect that Sheldon had colluded with Susan to bring the action in order to derive a financial benefit by having Ryan adjudicated the father, rather than Sheldon) were "claims . . . of a factual, legal or mixed nature,"

child support payments from Sheldon, as well as earned income of $15,000 per year attributed to Susan,[15] the Probate Court judge ordered Ryan to pay child support in the amount of $285 per week and to provide medical insurance for the child. The award was based, in part, on the judge's finding, challenged by Ryan, that Ryan's income at the time of trial was $70,000 per year.

The findings reflect that the judge considered significant the evidence of the annual income reported by Ryan and his wife on their jointly filed Federal tax returns, reflecting that for the years 1997 through 2000, Ryan and his wife both claimed earnings from the dental laboratory business that was owned and operated by Ryan.[16] The judge was not required to believe testimony that the nature of the work performed by Ryan's wife as office manager for the business (the only occupation she lists on the tax returns) entitled her to a substantial salary that was equal to or greater than that of Ryan,[17] and the judge's attribution of income to Ryan was reasonable on the basis of the credible evidence. In any case, even had the judge determined that Ryan's income consisted solely of the amounts set forth on his

G. L. c. 231, § 6F, against which Sheldon was called upon to defend against. That the frivolous claims were advanced by Ryan's attorney is precisely what warrants the imposition of the award. See *Karellas* v. *Karellas*, 61 Mass. App. Ct. 716, 721 (2004).

[15]The judge acknowledged that he was departing from the child support guidelines by attributing earned income to Susan. The guidelines state that determinations of potential earning capacity are not intended to apply to custodial parents with children under age six. The judge's stated purpose in attributing income to Susan was to avoid a future complaint for modification when Susan's earned income approached the $15,000 per year figure, as the judge expected it would in the "near future." The department has not challenged this determination on appeal, and the matter is not before us.

[16]In 1997, combined annual earned income was listed on Ryan and his wife's joint tax returns as $87,948, plus interest income of $13,558, for a total income of $101,506; in 1998, the combined earnings number was $117,096, interest was $15,377, and total income was $132,473; in 1999, combined earned income was $120,096, and interest was $15,058, for a total income of $135,154; and in 2000, combined earned income was in the amount of $96,000, and interest was $17,223, for a total of $113,223.

[17]Ryan's form W-2 for the year 2000, for example, lists his earnings from the business as $48,000, leaving $48,000 in earnings to be claimed by his wife (her form W-2 is not included in the record). For 1999, income in the amount of $59,000 is set forth in Ryan's form W-2, leaving a balance of $61,096 as the amount claimed by his wife as her earnings.

W-2 form and some or all of the interest income, it would not have been error for the judge to consider whether the income of Ryan's wife made more of the income earned by Ryan available for the support of the child. See *Department of Rev.* v. *Mason M.*, 439 Mass. 665, 675 (2003).

f. *Other claims.* To the extent we do not discuss other arguments made by Ryan (viz., judicial estoppel requires dismissal; the trial judge should have attributed a greater amount of annual income to Susan), they "have not been overlooked. We find nothing in them that requires discussion." *Commonwealth* v. *Domanski*, 332 Mass. 66, 78 (1954).

*Judgment affirmed.*