# DECISIONS

## OF THE

## SUPREME JUDICIAL COURT

### OF

## MASSACHUSETTS

---

**DANGER RECORDS, INC. *vs.* STEVEN L. BERGER;
FREDERICK G. DANNER & others,[1]
defendants-in-counterclaim.**

Suffolk. December 6, 2004. - April 14, 2005.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Appeals Court,* Appeal from order of single justice. *Practice, Civil,* Frivolous action, Attorney's fees, Costs.

This court concluded that the underlying factual findings accepted by a single justice of the Appeals Court reviewing an order of attorney's fees and costs under G. L. c. 231, § 6F, are final and are not subject to further review; rather, only errors of law committed in connection with such an award may be corrected on appeal from the single justice's decision under G. L. c. 231, § 6G. [7-13]
In an appeal brought pursuant to G. L. c. 231, § 6G, from a decision of a single justice of the Appeals Court reviewing an order of attorney's fees

---

[1]Leonard E. Collins and Danger Records, Inc.

and costs on a motion under G. L. c. 231, § 6F, the plaintiff failed to identify any error of law in the single justice's decision. [13-14]

CIVIL ACTION commenced in the Superior Court Department on April 8, 1996.

A proceeding for review of an order awarding attorney's fees and costs was heard in the Appeals Court by *Phillip Rapoza*, J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Derege B. Demissie* for the plaintiff.

*Linda E. Abrahams* (*Dennis P. Derrick* with her) for Stephen L. Berger.

SOSMAN, J. The present appeal requires us to articulate the proper scope of review of an order of a single justice of the Appeals Court pursuant to G. L. c. 231, § 6G, and then, applying that standard of review, to determine whether the single justice erred when he affirmed the trial judge's order awarding attorney's fees and costs pursuant to G. L. c. 231, § 6F. In an unpublished memorandum and order pursuant to its rule 1:28, the Appeals Court reversed the single justice, concluding that there was no basis in the record for the trial judge's finding that the defendant's defenses and counterclaims were wholly insubstantial, frivolous, and not advanced in good faith. *Danger Records, Inc.* v. *Berger*, 61 Mass. App. Ct. 1110 (2004). We granted the plaintiff's application for further appellate review, and now affirm the order of the Appeals Court's single justice.

1. *Factual background.* On April 8, 1996, Danger Records, Inc. (Danger), filed a complaint in the Superior Court seeking a declaration that the defendant, Steven Berger, was not a legal or equitable shareholder of any stock in Danger. On May 16, 1996, Berger filed his answer, contending that he was a shareholder. That answer also included counterclaims against Danger, Frederick Danner (claimed by Danger to be the sole shareholder), and Leonard Collins (another participant in the venture), alleging that their failure to repay loans Berger made to Danger, their attempts to remove him as a director, and their attempts to deprive him of his shares of stock constituted a breach of contract, breach of fiduciary duty, and violation of G. L. c. 93A.[2]

---

[2]Although the complaint names only Danger Records, Inc. (Danger), as plaintiff, Berger's counterclaims purported to add Danner and Collins as

After a jury-waived trial, the judge found in favor of Danger on its complaint for declaratory relief, entering a declaration that Berger was not and never had been a shareholder of Danger. The judge also found in favor of the counterclaim defendants on all of Berger's counterclaims. Berger appealed from that judgment, and the Appeals Court affirmed the judgment in a memorandum and order pursuant to its rule 1:28. *Danger Records, Inc.* v. *Berger*, 55 Mass. App. Ct. 1109 (2002). We denied Berger's application for further appellate review, 437 Mass. 1109 (2002), and that judgment is now final.

We summarize the judge's findings with respect to the merits of the claims, defenses, and counterclaims, insofar as they provide background to her later ruling concerning attorney's fees. In 1992, Berger and Danner decided to form a record company, with Danner contributing his technical recording expertise and the use of his recording studio (in which he had invested approximately $500,000). Berger, an attorney, was to contribute his legal expertise (in particular his claimed expertise in representing musicians in contract matters) and approximately $40,000 in funds. Berger handled the preparation and filing of the papers to form the corporation, listing Danner and himself as directors, along with two other individuals who did not know that they were being named as directors. Berger also had control of the corporate checkbook.

The venture did not prosper, in part due to the fact that Berger did not have the contacts or expertise in the music industry that Danner had been led to believe he had. To rectify the problem, Danner sought the assistance of Collins, who had significant experience with major recording companies. Collins, although ultimately willing to participate, wanted neither an ownership interest in nor any financial responsibility for the company. Danner, Berger, and Collins agreed to an arrangement whereby Danner would provide the studio and recording expertise, Berger would provide legal representation and funds, and Collins would run the daily operation and provide promotion and marketing expertise. None of them would draw any salary; the three would

defendants-in-counterclaim. It does not appear that Danner or Collins objected to Berger's use of a counterclaim, as opposed to a third-party complaint, as the procedural device that made them parties to the case. We therefore refer to them as counterclaim defendants.

share equally in whatever profits were earned. Pursuant to this understanding, Collins began working at Danger at the end of 1993.

In December, 1993, and January, 1994, Berger filed certificates changing the officers and directors of the corporation, removing the two people who had not known they were even part of the corporation; listing himself, Danner, and Collins as directors (despite the fact that Collins did not want to be a director); and listing himself as the new clerk of the corporation.[3] Neither Danner nor Collins knew anything about the corporate filings prepared by Berger and submitted by him to the Secretary of the Commonwealth.

Berger also handled the corporation's tax returns. Unbeknownst to Danner or Collins, Berger had advised his own accountant to prepare the 1993 corporate income tax returns as if Danger were a qualified Subchapter S corporation[4]; to list himself, Danner, and the former clerk as equal shareholders; to reflect that he had made $21,175 in loans to the corporation; and to take the entire operating loss of $12,455 for himself. Neither Danner nor Collins signed or saw these tax documents.

Over the course of 1994, Berger's commitment to the venture waned. He began complaining that he was "tapped out" and suggesting to Danner and Collins that (contrary to their prior understanding) the expenses should be borne amongst all three of them. Collins reminded him that, if the venture failed, he would not get his money back. By the fall of 1994, Berger reduced the time he spent coming to the office and, by December, 1994, had ceased to do any work at all for Danger.

During the same period, Berger announced that he was separating from his wife, and divorce proceedings ensued shortly thereafter. In a series of financial statements submitted during 1994 and the first half of 1995 in connection with Berger's divorce proceedings, Berger did not make any reference to Danger or to any asset he held in connection with Danger.

[3]The judge's findings reference the fact that Berger was later removed as clerk and president. Her findings do not make clear whether he had listed himself as president on the original corporate filings or done so only on the later, revised filings.

[4]The corporation was not in fact qualified as a Subchapter S corporation, and the tax returns were rejected for that reason.

After Berger's departure, Collins and Danner looked into the corporation's financial affairs, and discovered an assortment of bills that Berger had neglected. They then paid those bills themselves. They also had the corporation's records reviewed by another attorney, who in turn contacted Berger's attorney. On March 3, 1995, for the first time, Berger asserted through his counsel that he was a stockholder. Danger held a directors' meeting on March 24, 1995, and removed Berger as president and clerk. At that time, they took no action with respect to Berger's claim that he was also a stockholder and director.

On July 21, 1995, Berger submitted a revised financial statement in his divorce proceeding, reporting for the first time that he had a "disputed" one-third interest in Danger, but assigning no value to that claimed interest. That financial statement made no reference to any loans owed to him by Danger. It was not until much later (and well after the present litigation commenced in April, 1996) that Berger's financial reports in the divorce proceeding referenced any claimed debt owed to him by Danger, which he listed at $32,487.73.

At trial, Berger testified that there had been an oral agreement that he was to own one-third of the stock in Danger. The judge did not credit his testimony, noting that it was supported only by documents that Berger himself had created, without approval of or review by Danner or Collins, in an attempt to "conjure up and paper a relationship to which the parties never agreed." She also noted that Berger's claims with respect to stock ownership and loans were inconsistent with the financial statements he had submitted during the initial phases of his divorce proceedings. She concluded that there had never been any discussion about Berger's being a shareholder, and that Berger's financial contributions to the venture (such as they were) had not been loans.[5] The understanding had been that Berger would make his contribution of funds and legal expertise,

---

[5]The judge's findings also reflect the fact that, contrary to the understanding that no one would receive any "salary or any draw," Berger had withdrawn funds for his own use. Although Berger claimed that he had repaid those funds, there was no documentary evidence of that alleged repayment, and Berger had failed to produce various documents in discovery. Because Danger was seeking only a declaration that Berger was not a shareholder, and was not seeking any monetary restitution, the judge did not undertake to resolve

and would share in the profits if and when any were earned. None had been earned by the time Berger abandoned the venture, and he was not entitled to get his money back. The judge therefore entered a declaration that Berger was not and never had been a shareholder in Danger, and concluded that Danger, Danner, and Collins had not breached any contractual or fiduciary duty or committed any violation of G. L. c. 93A.[6]

2. *Procedural history of the motion for attorney's fees and costs under G. L. c. 231, § 6F.* After the judge issued her findings and rulings, Danger and the two individual counterclaim defendants filed a motion for attorney's fees and costs pursuant to G. L. c. 231, § 6F. The judge issued her separate findings and order on that motion, finding that Berger had been represented by counsel,[7] and that his defenses and counterclaims were "wholly insubstantial, frivolous and not advanced in good faith." G. L. c. 231, § 6F. As the basis for her conclusion that Berger's claims and defenses were wholly insubstantial and frivolous, the judge found that there had been no evidence, other than Berger's own testimony, to support them. She also referenced her finding at trial that documentary support proffered in support of Berger's claims consisted entirely of documents that Berger himself had prepared "to conjure up" a relationship with Danner and Collins different from the one to which they had agreed. She also gave weight to the fact that, although the original suit had only been filed by Danger, Berger's counterclaims had brought two individuals into the case (see note 2, *supra*); making them respond to the allega-

---

whether Berger had wrongfully taken funds, whether or to what extent he had repaid those funds, or whether Berger owed anything to Danger.

[6]The judge addressed the G. L. c. 93A claim on the merits, concluding that "there [was] not one shred of evidence . . . that Danner and Collins acted unfairly or deceptively." Beyond that absence of any unfair or deceptive conduct, we note that G. L. c. 93A would not be applicable to a dispute among coventurers. See *Szalla* v. *Locke*, 421 Mass. 448, 451 (1995), and cases cited.

[7]Berger is an attorney, licensed to practice law in Massachusetts. At the time his answer and counterclaims were filed and up through the time of the first pretrial conference, Berger was represented by separate counsel. Thereafter, he represented himself. Berger's opposition to the motion for attorney's fees and costs did not contest that he had been "represented by counsel during most or all of the proceeding," G. L. c. 231, § 6F, and that issue is not before us on appeal.

tions individually had been "abusive" on Berger's part. With respect to whether Berger had pursued his claims and defenses in bad faith, the judge found that Berger had "no reason to believe" that he had any substantial, nonfrivolous claims, and that advancing them was therefore not in good faith. Accordingly, she awarded Danger and the counterclaim defendants a total of $12,335.70 in attorney's fees and costs.[8]

Berger appealed from the award of fees and costs. See G. L. c. 231, § 6G. That appeal was stayed pending the outcome of the appeal of the underlying judgment. See *Bailey* v. *Shriberg*, 31 Mass. App. Ct. 277, 283, 284 (1991). After the judgment was affirmed, the single justice proceeded to affirm the award of fees and costs "substantially for the reasons stated in the judge's order." Berger then appealed from the order of the single justice.

The Appeals Court held that the judge had erred in concluding that there was no evidence to support Berger's claim to stock ownership and loan repayment, because (1) Danger's own complaint had described the parties' business arrangement as including an agreement that "any loans" made by Berger would be repaid; (2) depositions of Danner and Collins in Berger's divorce proceedings included references to Berger and themselves as "partners" in the venture; and (3) Berger's testimony, and the corporate and tax filings he prepared for Danger, supported his claim to be a stockholder in Danger. Where there was at least some evidence to support his claims and defenses, the Appeals Court held that those claims and defenses could not qualify as insubstantial or frivolous, or as having been put forward in bad faith. The court therefore reversed the order of the single justice, and ordered that the motion for attorney's fees and costs be denied.

3. *Discussion.* a. *Standard of review.* Before addressing the merits of the present appeal, we must consider the permissible route of an appeal from an order of a single justice pursuant to G. L. c. 231, § 6G, and the corresponding standard of review that applies to such an appeal.

---

[8]Danger and the counterclaim defendants had requested a total of $16,369.90 in fees and costs. They have not challenged the judge's disallowance of a portion of their fees and costs, and Berger has not contested the judge's calculation of the amount of reasonable fees and costs incurred.

Section 6F requires that, in order to award fees, there must be a "separate and distinct finding, that all or substantially all of the claims, defenses, setoffs or counterclaims, whether of a factual, legal or mixed nature, made by any party who was represented by counsel during most or all of the proceeding, were wholly insubstantial, frivolous and not advanced in good faith," and the "specific facts and reasons" on which that finding is based must be articulated. If such a finding is made, the judge "shall award" reasonable attorney's fees, costs, and expenses incurred by the other side in opposing the insubstantial, frivolous, and bad faith claims or defenses. G. L. c. 231, § 6F.[9] Where such an award is made, the judge must "specify in reasonable detail" the computations and calculations used to determine the amount of the award. *Id.*

Decisions on awards of fees and costs under § 6F have an "anomalous route of appeal" by way of § 6G. *Bailey* v. *Shriberg, supra* at 282. Any party aggrieved by a decision on a § 6F motion in the Superior Court, Land Court, Housing Court, or Probate and Family Court may appeal to a single justice of the Appeals Court. G. L. c. 231, § 6G. The notice of appeal must be filed within ten days of the decision, whereupon a limited record is assembled and transmitted (consisting of the motion, the decision, and "any other documents relevant to the appeal"), and the matter is referred to the single justice for a "speedy decision." *Id.* The appeal under § 6G is separate and distinct from an appeal of the judgment itself, with the § 6G appeal heard by the single justice and the appeal of the judgment heard by a panel of the Appeals Court. See *Department of Revenue* v. *Ryan R.*, 62 Mass. App. Ct. 380, 387 (2004); *Bailey* v. *Shriberg, supra* at 282-284. In the event that there is both an appeal under § 6G and an appeal from the judgment, the § 6G appeal before the single justice is stayed (notwithstanding the mandate that the single justice render a "speedy decision") pending the outcome of the appeal from the judgment. *Bailey* v. *Shriberg, supra* at 284. A § 6F award "depends on the vitality"

[9]In addition to an award of fees and costs, the judge shall also apply an increased rate of interest to any money judgment obtained by the party who had to overcome insubstantial, frivolous, and bad faith defenses, setoffs, or counterclaims. G. L. c. 231, § 6F.

of the underlying judgment, *Ben* v. *Schultz,* 47 Mass. App. Ct. 808, 814 (1999), and the decision on appeal from the judgment thus has the potential to render the § 6G appeal moot. See *Strand* v. *Herrick & Smith,* 396 Mass. 783, 791-792 & n.8 (1986).[10]

The single justice hearing the § 6G appeal "shall review the finding and award, if any, appealed from as if [the single justice] were initially deciding the matter, and may withdraw or amend any finding or reduce or rescind any award when in [the single justice's] judgment the facts so warrant." G. L. c. 231, § 6G. While the review is thus de novo in the sense that the single justice may draw his or her own ultimate conclusions as to the merits of a fee award, that review is based on "the subsidiary facts as found by the trial judge." *Miaskiewicz* v. *LeTourneau,* 12 Mass. App. Ct. 880, 881, 882 (1981) (rejecting argument that single justice must make "independent determination of facts"). See *Ben* v. *Schultz, supra* at 814 (single justice considering § 6G appeal "looks only to the subsidiary facts found by the trial court judge in the § 6F proceeding").

As originally enacted, § 6G made no reference to any appeal from the single justice's order to the Appeals Court itself. St. 1976, c. 233, § 1. Beginning with *Katz* v. *Savitsky,* 10 Mass. App. Ct. 792, 794 (1980), the Appeals Court held that, where § 6G contained no provision "which purports to attribute any measure of finality to an order entered by one of our single justices under that section," such an order could be reviewed by a panel of the Appeals Court. See *Bailey* v. *Shriberg, supra* at 282; *Cohen* v. *Hurley,* 20 Mass. App. Ct. 439, 441 (1985); *Miaskiewicz* v. *LeTourneau, supra* at 881. This court implicitly endorsed that interpretation of § 6G. See *Hahn* v. *Planning Bd. of Stoughton,* 403 Mass. 332, 334 (1988) (granting direct appellate review of award by Superior Court judge affirmed by single justice order on appeal under § 6G).

However, the Legislature subsequently amended § 6G to provide that the decision of the single justice hearing an appeal of a § 6F motion "shall be final." St. 1992, c. 133, § 561. In

---

[10]Presumably for this same reason, payment of a § 6F award (whether or not there is a § 6G appeal) is itself stayed "until the completion of all appeals relating to the civil action in which the award was made." G. L. c. 231, § 6G.

the wake of that amendment, the Appeals Court reconsidered whether it had jurisdiction over appeals from single justice decisions under § 6G, and concluded that it still had jurisdiction to entertain such appeals. *Bartlett* v. *Greyhound Real Estate Fin. Co.*, 41 Mass. App. Ct. 282, 285-291 (1996). While recognizing that there was much to be said in favor of the proposition that "final" meant "not being subject to further review," *id.* at 286-288, the Appeals Court ultimately rejected that position for two reasons: (1) § 6G, as amended, still retained a provision that "[a]ny appeal to . . . the appeals court shall proceed according to the Massachusetts Rules of Appellate Procedure," which would be superfluous if there were no avenue of appeal to a panel of the Appeals Court, *id.* at 289; and (2) if there were no such appeal available, parties would resort to review by way of an action in the nature of certiorari, G. L. c. 249, § 4, filed before a single justice of the Supreme Judicial Court, followed by appeal to the full court, a practice that would be contrary to "sound principles of judicial administration," *id.* at 290, quoting *Katz* v. *Savitsky, supra* at 795.

To date, we have not had an occasion to consider the Appeals Court's interpretation of § 6G with respect to whether the term "final" is intended to make the single justice's decision unreviewable. We take this occasion to express our agreement with the thoughtful and detailed analysis of that issue set forth in *Bartlett* v. *Greyhound Real Estate Fin. Co., supra.* Moreover, in the intervening years since that decision, the Legislature has not undertaken to amend § 6G further, and the practice of hearing such appeals in the Appeals Court has now become established. See, e.g., *Karellas* v. *Karellas*, 61 Mass. App. Ct. 716 (2004); *Pirie* v. *First Congregational Church*, 43 Mass. App. Ct. 908 (1997).

However, as recognized in *Bartlett* v. *Greyhound Real Estate Fin. Co., supra* at 291 n.12, the articulation of the scope of review of a single justice's decision must give some meaning to the mandate that that decision be "final." There, the court suggested that "such true finality will reside in a single justice's findings of fact." *Id.* In that case, there was an error of law, in that the judge had failed to comply with two of the requirements of § 6F, namely, the requirement that the judge give

"specific facts and reasons" for the findings with respect to the insubstantial, frivolous, and bad faith nature of the claims, and the requirement that the calculation of the amount of the fees be set forth expressly. *Id.* at 291-292.

In subsequent cases, the Appeals Court has confirmed its initial impression that the term "final" as used in § 6G applies to the underlying factual findings made in connection with an award under § 6F. See *Karellas* v. *Karellas, supra* at 720 (to accord "finality" to single justice's findings and decision under § 6G, review limited to "any alleged error of law or abuse of discretion"); *Pirie* v. *First Congregational Church, supra* at 909 ("We treat the single justice's order as incorporating the findings of fact of the Superior Court judge and accord finality to them," limiting review to "any alleged error of law or abuse of discretion"). We agree. The term "final" in § 6G must be given some meaning, and it connotes that whatever form of review is available must be of extremely limited scope. Cf. *Gos* v. *Brownstein*, 403 Mass. 252, 254 (1988) (provision in G. L. c. 261, § 27D, that single justice's decision on appeal from denial of indigent litigant's motion to waive costs "shall be final" means no further appeal available). According finality to the factual findings adopted by a single justice in his or her § 6G review is an appropriate way to give meaning to the requirement that the single justice's decision be "final."

In *Bartlett* v. *Greyhound Real Estate Fin. Co., supra* at 291, the Appeals Court also suggested that review of the single justice's decision may be had "at least to the same extent as certiorari review." Depending on the nature of the underlying proceeding being reviewed by way of an action in the nature of certiorari, we have sometimes applied the "substantial evidence test" (requiring that the findings below be supported by "substantial evidence"). See, e.g., *Black Rose, Inc.* v. *Boston*, 433 Mass. 501, 503-505 (2001), and cases cited (substantial evidence test applies to certiorari review of license revocation); *Boston Edison Co.* v. *Boston Redevelopment Auth.*, 374 Mass. 37, 48-53 (1977) (certiorari review of public agency's approval of urban redevelopment project included review under substantial evidence test). The standard applicable to certiorari review is not an inflexible one, but is instead determined according to

"the nature of the action sought to be reviewed." *Id.* at 49. Thus, to the extent that certiorari review may provide a useful analogy to the review of a single justice's determination under § 6G, that analogy instructs that the scope of review of a § 6G decision must itself be tailored to the nature of the proceedings under § 6F and § 6G.

Considering the nature of the action being reviewed on appeal of a single justice's decision under § 6G, we do not find it appropriate to subject that decision to review under the substantial evidence test. We note that litigation over an award of attorney's fees is ancillary to the determination of the merits of the underlying dispute; that the judgment itself (including any findings on which the judgment rests, which findings may in turn be incorporated as part of the reasons underlying the § 6F findings) has either already been affirmed on appeal or has not been appealed[11]; that the original § 6F decision from the trial judge has itself already been subjected to one level of appeal to the single justice, who is given broad authority to review the award de novo; that § 6G itself contemplates that decisions on appeal from § 6F awards are to be "speedy"; and, as discussed above, that we need to treat at least some aspect of the single justice's decision as "final," consistent with the wording of § 6G. Thus, while certiorari review often includes an assessment of the evidence that supports the findings being reviewed, we would not fashion a scope of review for § 6G decisions that included any reassessment of the factual findings.

We therefore conclude that the underlying factual findings adopted and accepted by the single justice are to be treated as

---

[11]Here, the judge's § 6F findings relied heavily on one of the factual findings that she had made as part of her trial findings, namely, that Berger had "conjure[d] up" the documentation he offered in support of his claims. With the judgment now final, the factual findings on which that judgment is based ought now be unassailable. Yet Berger devotes much of his brief on appeal from the single justice's § 6G decision to an attack on the trial judge's conclusion that he "conjure[d] up" any documents. And, despite the finality of the judgment, the Appeals Court decision reversing the fee award contains thinly veiled criticism of the judge's trial findings as part of its analysis of the evidence concerning the insubstantial, frivolous, and bad faith nature of Berger's claims and defenses. The present case thus illustrates the anomaly that can result if the evidentiary support for the judge's § 6F findings is revisited on appeal from the single justice.

"final" and are not themselves subject to further review. Only errors of law committed in connection with an award under § 6F may be corrected on appeal from the single justice's decision under § 6G. See *Pirie* v. *First Congregational Church, supra* at 910 (§ 6F award reversed where there were no express findings concerning wholly frivolous and insubstantial nature of claims); *Bartlett* v. *Greyhound Real Estate Fin. Co.*, 41 Mass. App. Ct. 282, 291-292 (1996) (reversing single justice where there was no specific finding with regard to lack of good faith and no explication of computation of amount of fees awarded).

b. *Application to present appeal.* For the reasons discussed above, our review of the single justice's decision under § 6G is limited to review for an error of law. However, Berger's assertions of error relate exclusively to the trial judge's factual findings, which the single justice adopted. Berger contends that the evidence did not support the trial judge's finding that his claims and defenses were wholly insubstantial, frivolous, and not advanced in good faith.[12] That is precisely the kind of challenge that is not to be considered on such an appeal, given that the factual findings that have been accepted by the single justice are not to be subjected to any further review. Here, the judge's decision on the § 6F motion contained the requisite specific and separate findings addressing each of the three items required

[12]The Appeals Court agreed with him. Even if we were to consider the evidence underlying the factual findings made by the trial judge and accepted by the single justice, we see no defect in that evidence. The issue is not whether there was any evidence that would, viewed in the light most favorable to Berger, have supported his claims and defenses — the issue is whether there was evidence to support the judge's conclusion that his claims were wholly insubstantial, frivolous, and not advanced in good faith. The discrepancies between Berger's assertions in this case and the positions he took during his divorce, and the fact that he "conjure[d] up" the documentation to support his claims, would support the judge's findings. Further, the judge who rendered the § 6F award was the trial judge who had observed Berger's testimony and found it wholly incredible. Berger acknowledges that "the lack of credibility of a party about an important issue can furnish the basis for a finding that a claim or defense is insubstantial and frivolous." Thus, the mere fact that Berger himself testified in support of his own claims, and that there were shreds of evidence that would arguably support those claims (which were readily susceptible of alternate interpretations and explanations), would not preclude a finding that the claims were wholly insubstantial and frivolous — even a person bringing the most patently false and groundless claim will customarily offer *something* that ostensibly supports it.

by § 6F. Cf. *Pirie* v. *First Congregational Church, supra.* Her decision also included the required explanation with respect to the computation of the amount of fees and costs awarded (which computation has not been challenged by Berger). Cf. *Bartlett* v. *Greyhound Real Estate Fin. Co., supra.* Berger has identified no procedural error that would affect the § 6F award. Accordingly, he has not identified any error of law in the single justice's decision to affirm that award, and we therefore affirm the order of the single justice.

*So ordered.*